Leonard H. EMIG, Plaintiff,

v.

ERIE LACKAWANNA RAILWAY COMPANY, Defendant.

Civ. A. No. 103–71 ERIE.

United States District Court,
W. D. Pennsylvania.

Nov. 22, 1972.

William W. McVay, Pittsburgh, Pa., for plaintiff.

Robert L. Walker, Meadville, Pa., for defendant.

## OPINION

WEBER, District Judge.

█ This is an action brought under the Federal Employers' Liability Act and was tried to the court without a jury. At the time of the accident the plaintiff was engaged in employment for his employer, an interstate carrier by railroad, engaged in interstate commerce and the court has jurisdiction under that Act.

Plaintiff was employed by defendant railroad as a car man for many years prior to June 24, 1969. On that date at about 2:30 p. m. he was engaged in inspecting cars in defendant's Meadville yards on a newly-arrived westbound train. It was plaintiff's duty to inspect the cars of this train. In so doing he found a "piggy back" car of the A.T. and SF RR Co. with a bridge plate dropped down and protruding outwardly at an angle from this car. A "piggy back" car is a low flat-car upon which motor truck semi-trailers are loaded and carried. The bridge plate is a metal plate weighing approximately 150 to 200 pounds. It is attached to the end of the "piggy back" car by a hinge and may be extended horizontally from one "piggy back" car to the next so that in loading a trailer can be moved over this bridge from one car to the next car. When the cars are in transit the bridge plate is raised to a vertical position and secured with a latch.

While in the process of making this inspection he found a broken hinge on the bridge plate which allowed the bridge plate to hang down and extend beyond the car. In such a situation the plaintiff as a car inspector had the discretion of attempting to make the loose part secure so that the car could continue to its destination or to have the car removed to the repair shop where such repairs could be made. The plaintiff called for assistance to a nearby co-worker who held a job similar to his own and the two decided to lift the plate back onto its position on the "piggy back" car. This required their lifting the bridge plate up toward them over the rail on the side of the car and back over the edge of the car onto the adjoining "piggy back" car. The plaintiff discussed this procedure with his co-worker before undertaking the operation. In order to perform this operation it was necessary for the two men to lift the bridge plate from about waist height to shoulder height and then to push the bridge plate away and allow it to drop into its intended place. The plaintiff realized that in allowing the plate to drop he must remove his fingers quickly before the plate dropped or they would be in danger of serious injury. The plaintiff did not remove his fingers in time and the end of his left middle finger was caught between the bridge plate and the railroad car ultimately resulting in the amputation of the entire middle finger.

██ The plaintiff has the burden of establishing that his injury was due to negligence on the part of his employer railroad which contributed in any degree to the injury. While proof of negligence

may be supplied by proof of a violation of the Federal Safety Appliances Act, 45 U.S.C. § 1 et seq. and while such a violation was alleged in the pleadings, there was no evidence of any nature at the trial which would establish a violation of said Act. No part of any equipment or appliances which are covered by said Act were involved in the plaintiff's injury in this case. The employer is not an insurer of its employees' safety, and negligence is not presumed by proving that an accident occurred. It must be shown that the employer, with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury.

■■ An employer has a duty to use ordinary care to furnish his employees with a reasonably safe place to work and reasonably safe equipment to work upon. The allegation in this case is that the defendant railroad furnished the car which was unsafe by reason of the defective and loose bridge plate. However, the railroad's knowledge, actual or constructive, of the danger from a hazardous condition is essential to the existence of negligence. Actual knowledge is not required if there is proof that the railroad could by reasonable inspection have discovered the defect.

This case presents a situation where the railroad did perform its duty of inspection and did discover the defect before that defect injured any employee. There is no evidence to show that this defective condition existed for any period of time before being discovered by the plaintiff. The evidence shows that the defective condition was discovered by the plaintiff who was the railroad's agent specifically charged with the duty of inspecting cars to discover defective or dangerous conditions. This condition was discovered by the railroad in the course of inspection by the plaintiff and it was not the defect itself which injured the party but the manner in which the plaintiff chose to remedy the condition.

■■ The cases have held that where the injury arises because of the way in which an employee performs his job, the employer is not liable. Even under the Safety Appliances Act, where the defect in the particular appliance is negligence per se, the fact that the employee chooses a dangerous or risky manner in which to remedy the defect and consequently suffer injury does not impose liability on the employer. Rose v. Atlantic Coast Line R. Co., 403 F.2d 204 [4th Cir. 1968]. Similarly, in Wadiak v. Illinois Cent. R. Co., 208 F.2d 925 [7th Cir. 1953], the plaintiff undertook a dangerous manner of performing his duty at the suggestion of a fellow employee who was not his immediate superior. In language particularly applicable to the case at bar the court stated:

"He was not injured because he did not have equipment, for he had access to sufficient and adequate tools and devices. He was injured because he saw fit not to use the equipment but to ignore it and to *handle the barrel manually*. He was not injured because he needed help and did not have it but because he saw fit not to ask for help. He was not injured because the car had been improperly loaded and carried by defendant in such condition, but, because, when he was directed to repair the condition, without approaching his superior, he voluntarily adopted a dangerous method of doing so instead of a safe one. He was at the car solely because it needed repairs; indeed it was his duty to make those repairs. How the damage which he was to rectify had come about and who had caused it was wholly immaterial. He faced a fact; the car was damaged, it was his duty to repair, he and his partner had the choice of methods; nothing was done by defendant causing the injury incurred in his voluntary choice of how best to do his duty. The law imposes no liability under such circumstances." (emphasis supplied) (p. 930)

In Wetherbee v. Elgin, Joliet & Eastern Ry. Co., 191 F.2d 302 [7th Cir. 1951], affirmed after retrial 204 F.2d 755 [7th Cir. 1953], plaintiff's decedent

was a switchman who was riding the lead box car as the train was being backed up. It was decedent's duty to make sure that the tracks were clear and to give warning of any danger. There was a piece of wood on the track and the train derailed. The court stated:

> " 'At the time and place of this accident, according to his own testimony plaintiff himself was the agent of the railroad company charged with the duty of keeping this spur track clear for the safe movement of his train. Under such circumstances, this became a safe or an unsafe place to work according to whether or not plaintiff performed or failed to perform his duties. . . The plaintiff has proven no negligence on the part of the railroad company in the care used to afford plaintiff a safe place to work.' " (citing Killian v. Pennsylvania R. Co., 336 Ill.App. 152, 82 N.E.2d 834)

(191 F.2d at 307–308).

In Barnett v. Terminal R. Ass'n. of St. Louis, 228 F.2d 756 [8th Cir. 1956], where a car inspector and repairman brought an action for injuries sustained when he was struck by an air brake hose connection which came loose while he was attemping to inspect and repair it. The court said:

> "This plaintiff was according to his testimony a car inspector and repairman. As such it was his duty to make such repairs on these hose (sic) as was necessary to allow them to couple safely . . . If there was ice on the inside of this coupler, and we have pointed out that there is no evidence that there was, that was because plaintiff did not remove it and his negligence in failing so to do would be the sole proximate cause of the accident." (p. 761)

In Illinois Central R. R. Co. v. Skaggs, 240 U.S. 66, 36 S.Ct. 249, 60 L.Ed. 528 [1916], the Court stated:

> "It may be taken for granted that the statute does not contemplate a recovery by an employee for the consequences of action exclusively his own; that is, where his injury does not result in whole or in part from the negligence of any of the officers, agents, or employees of the employing carrier or by reason of any defect or insufficiency, due to its [own] negligence, in its property or equipment." (pp. 69–70, 36 S.Ct. p. 250)

The plaintiff's own testimony clearly establishes that he was aware of the risk that he faced in performing the operation and the way that he proposed to do it. The plaintiff stated:

> "Well, when I shoved that over there, when I went to shove it, I knowed I had to get my hands out of the way, so I knowed that and jerked my hands back; and what caught my hand, I don't know."

(T. p. 48, line 15 through 18).

And on cross-examination:

Q. And you knew when you and Paul discussed the fact, as you did this, that you were going to have to get your hands out of the road when you threw it?

A. That's right.

Q. You knew if you didn't get your hands out of the road, you would get hurt?

A. That's right. I had forty-six years' (sic) experience with that.

Q. After forty-six years of experience, you knew if you didn't get your fingers out of the road, you might get hurt?

A. Right.

Q. Your intent was to throw that, and pull your fingers out, so they wouldn't get hurt; right?

A. Right.

(T. p. 72, line 13 through p. 73, line 2).

■ Under all of the evidence in this case, we can find no evidence of failure on the part of the defendant to inspect the cars and equipment in its possession to determine their safety for use by its employees. While the car in defend-

ant's possession was defective and a source of peril to employees and other persons wherever it might be moved, the peril from the defect never resulted in the injury to any party. The defect was promptly discovered by plaintiff whose duty it was to make the inspection and discover such defects and take the action required to make the car safe. The sole cause of plaintiff's injury was the manner that he chose to perform the duty of making the car secure. The plaintiff performed this duty in the full realization that the way in which he chooses to replace the plate placed his fingers in great peril the moment that he dropped the plate back onto the railroad car. Under all of the evidence produced in this case we can find no evidence of negligence by the employer railroad which contributed in any degree to the injury which plaintiff suffered.

Judgment will be entered for the defendant.

This opinion shall constitute the findings of fact and conclusions of law of the court in this case.