**Thomas A. BEEBER, Plaintiff,**

v.

**NORFOLK SOUTHERN CORPORATION, Defendant.**

**Civ. No. F 90–30.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Sept. 20, 1990.

**1366**

David K. Hawk, Hawk, Haynie & Gallmeyer, Fort Wayne, Ind., Paul K. Hemmer, Columbus, Ohio, for plaintiff.

Russell H. Hart, John C. Duffey, Stuart & Branigin, Lafayette, Ind., for defendant.

## MEMORANDUM OF DECISION AND ORDER

ROGER B. COSBEY, United States Magistrate Judge.

This matter is before the court[1] based on "Defendant's Motion for Summary Judgment", filed on July 16, 1990. The plaintiff responded to the summary judgment motion on August 14, 1990 and the defendant replied on August 22, 1990. The matter has been fully briefed and is now ripe for ruling. For the reasons stated below, defendant's motion for summary judgment will be granted in part and denied in part.

### FACTUAL BACKGROUND

Thomas Beeber's ("plaintiff") complaint alleges four counts against Norfolk and Western Railroad ("defendant") based on two factually unrelated injuries and is brought pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq.; the Safety Appliance Act ("SAA"), 45 U.S.C. § 1 et seq.; and the Boiler Inspection Act ("BIA"), 45 U.S.C. § 22 et seq.

Count I relates to a February 1, 1988 incident. Plaintiff claims that while working as a conductor for the defendant that he received a right inguinal hernia resulting from applying "extra strain" in his attempt to throw a derail.[2] Plaintiff was required to throw the derail in order to allow railroad cars to be placed onto a side track. This count of the complaint alleges that defendant's negligent failure to inspect and maintain the derail caused an unsafe work place, thus giving rise to a claim under the FELA. The defendant's motion for summary judgment, simply stated, is that plaintiff has not shown any negligence, even the slightest, by defendant.

---

1. Pursuant to an order of reference entered April 17, 1990, jurisdiction of the undersigned Magistrate is based on 28 U.S.C. § 636(c)(1), both parties consenting.

2. "A derail is a switch-like safety device, a part of which lies on top of the rail in a manner which would cause a 'runaway' car to 'derail', in the clear, before it reached the main-line." (Defendants' Brief in Support of Motion for Summary Judgment, p. 1, n. 1).

To attempt to show the defendant's negligence and to oppose the motion for summary judgment under count I, plaintiff offers three types of evidence. First, plaintiff gives his own opinion that defendants failed to properly inspect and maintain the derail. Second, he repeats the statements purportedly made by other individuals that the derail was defective and had been reported. Finally, he contends that the derail has been replaced since the occurrence of plaintiff's injury; this to ostensibly raise the inference that if the derail had been working properly there would have been no need to replace it at all.

Counts II through IV relate to plaintiff's next injury which occurred on August 30, 1988. There, the train on which plaintiff was riding, together with an engineer and brakeman, failed to stop when the engineer applied the dynamic brakes. This brake failure necessitated the use of air brakes and emergency brakes in order to stop the train. Once the train was stopped, plaintiff, who was riding in the caboose, discovered that in the process of stopping the train it had become separated approximately 20 car lengths ahead. Plaintiff left the caboose and went to inspect the separation. Once there, he discovered that two knuckles[3] had broken. Without waiting the thirty to sixty minutes it would take for the brakeman to join him from the other end of the train, plaintiff returned to the caboose to get a replacement knuckle, and proceeded back to the separation point to begin repairs. After carrying the 75 pound knuckle plaintiff discovered a strain. Counts II, III and IV of the complaint allege that defendant negligently failed to maintain, inspect and repair its equipment; failed to provide plaintiff with adequate assistance on the train; and generally failed to provide a reasonably safe place to work, thus, stating claims under FELA, SAA and BIA.

With respect to his second injury, and the remaining claims, plaintiff claims that the dynamic brake system failed to stop the train either because it was not working properly or because it was inadequate to perform the job. As a result, two knuckles broke, (allegedly when emergency brake procedures were applied) and it fell to plaintiff to replace them. The central question becomes whether any of defendant's purported deficiencies (generally stated as; negligence, violation of the SAA and/or violation of the BIA) were the proximate cause of plaintiff's injuries.

## SUMMARY JUDGMENT STANDARD

The standard for summary judgment is well known to this Court. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* 106 S.Ct. at 2512; *Valentine v. Joliet Twp. High School Dist. No. 204*, 802 F.2d 981, 986 (7th Cir.1986).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue

---

**3.** A knuckle is a coupling which holds railroad cars together. Beeber's deposition, p. 84.

of material fact." *Celotex,* 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir. 1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 106 S.Ct. at 2551.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 106 S.Ct. at 2512.

## DISCUSSION

### COUNT I

Any discussion about this count should start at Fed.R.Civ.P. 56(e) which reads in part:

> Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts *as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to matters stated therein. (emphasis added).

In short, plaintiff must come forward with evidence to establish the existence of an element essential to his case. *Celotex,* 477 U.S. 317, 106 S.Ct. at 2550. In so doing, he must establish negligence under the FELA. *Herdman v. Pennsylvania R.R. Co.,* 352 U.S. 518, 77 S.Ct. 455, 1 L.Ed.2d 508 (1957). His task is relatively simple: to show that defendant's negligence played any part, even the slightest in producing the injury for which damages are sought. Prosser and Keeton on The Law of Torts § 80 (W. Keeton, D. Dobbs, R. Keeton, & D. Owen 5th ed. 1984). Having said that, however, it is well to remember that speculation, conjecture and possibilities are still not enough. *Id.*

■ To start off, defendant has a duty under the FELA to exercise reasonable care in providing a reasonably safe place to work, reasonably safe conditions in which to work and reasonably safe tools and equipment. *Shenker v. Baltimore & Ohio R.R. Co.,* 374 U.S. 1, 7, 83 S.Ct. 1667, 1671, 10 L.Ed.2d 709 (1963); *Urie v. Thompson,* 337 U.S. 163, 178 n. 16, 69 S.Ct. 1018, 1028 n. 16, 93 L.Ed. 1282 (1949).

■ The defendant's liability is not absolute, however, and the employer is not liable for failing to provide a safe workplace if it has no reasonable way of knowing that the potential hazard exists. *Gallose v. Long Island R. Co.,* 878 F.2d 80 (2nd Cir. 1989). If an employer learns or should learn of potential hazards it must take reasonable steps to investigate, inform and protect its employees or it will be liable for any resulting injury. *Id.* The court will discuss seriatim each of the three ways plaintiff has attempted to show a breach of this duty by defendant.

### A. *Plaintiff's Lay Opinion Testimony*

Plaintiff first offers his own affidavit testimony that when he attempted to operate the derail it was stiff and hard to operate. Plaintiff's affidavit ¶ 3. He next opines that a properly working derail would not be stiff or hard to operate. *Id.* at ¶ 4. From this premise he jumps to the conclusion that the operating condition of

the derail was a direct result of the defendant's failure to properly maintain and inspect it. *Id.* While plaintiff's statement that the derail was stiff and hard to operate would presumably be admissible under Fed.R.Evid. 602; he still does not have the necessary personal knowledge to offer his lay opinion as to the cause. *Teen–Ed, Inc. v. Kimball Intern., Inc.,* 620 F.2d 399 (3rd Cir.1980). As stated in Fed.R.Evid. 701:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or determination of a fact in issue.

Fed.R.Evid. 701.

In order to give his lay opinion [4] as to the reason the derail was difficult to move, plaintiff must show that the opinion is: (1) rationally based on personal knowledge; and (2) that the testimony will be helpful to the trier of fact.

More precisely, any lay opinion of the plaintiff would first have to satisfy the "rational connection" test of Rule 701. J. Weinstein & M. Berger, Weinstein's Evidence ¶ 701[02] (1988). "The rational connection test means only that the opinion or inference is one which a normal person would form on the basis of the observed facts." *Id.* Additionally, the court must also determine whether the opinion or inference would be "helpful" to the jury in understanding the witness' testimony or to the determination of a fact in issue.

Plaintiff's statement that he experienced difficulty in attempting to throw the derail, and that he had had comparative ease in throwing it hundreds of times before, was a statement of fact based on personal knowledge and thus, admissible. Further, these facts rationally lead to his arguably helpful opinion that a properly working derail would have been easy to throw. Therefore, an inference arises that the derail was not working properly. Be-

yond this, however, all we have is plaintiff's legal conclusion that the derail was not properly maintained and inspected. This unsupported lay opinion fails the personal knowledge requirement and also is not helpful to the jury. *Soden v. Freightliner Corp.,* 714 F.2d 498 (5th Cir.1983).

Plaintiff states that he has worked for the defendant for well over 30 years and he has thrown this same derail hundreds of times. Yet, plaintiff admits that he has no idea why the derail was hard to operate (*see* the excerpted portions of plaintiff's deposition testimony, *infra* ). From this testimony, it clearly appears that plaintiff (even with all his experience) cannot help the jury in determining a fact in issue; that is, was the derail suffering from poor maintenance or lack of inspections?

The plaintiff's evidence also falls short in another area as well. In addition to showing that a defect occurred, plaintiff must also show that the defendant had notice of the defect, either actual or constructive. *Spencer v. Atchison, T. & S.F. Ry. Co.,* 92 Cal.App.2d 490, 207 P.2d 126 (1949); *St. Louis R. Co. v. Ingram,* 124 Ark. 298, 187 S.W. 452 (1916), *aff'd,* 244 U.S. 647, 37 S.Ct. 741, 61 L.Ed. 1370 (1917). "Under [45 U.S.C. § 51 ch. 2] the presumption prevails, even after proof of the defect, that the railway company was not aware of its existence; and until it is shown that the railway company knew, or in the exercise of ordinary care should have known, of the defect, it is not charged with that knowledge. *Id.* 187 S.W.2d at 453.

The record also offers no evidence as to what constitutes proper derail maintenance standards or inspection procedures. Moreover, even if the standards and procedures were in evidence, there has been nothing presented as to how defendant fell below those standards.

Nor should plaintiff be allowed to manufacture factual conflicts by his affidavit when he directly contradicts his earlier deposition testimony. Excerpts from plain-

---

**4.** Beeber's lack of "specialized knowledge" on the topic, as demonstrated in his deposition responses, makes him a poor candidate for expert status under Fed.R.Evid. 702 and 703. *See* excerpted portions of plaintiff's deposition, *infra.*

tiff's earlier deposition testimony about the derail is instructive:

> Q. And why was it stiff?
>
> A. I have no idea whether it was the weather condition. I don't know.
>
> Q. You couldn't say one way or the other why it was stiff that evening; is that true?
>
> A. No, I couldn't.
>
> Q. It would be speculation on your?
>
> A. I know it was rainy and icy, but I don't know if that had any bearing on it.

Beeber Deposition, p. 60.

Plaintiff has recently testified by affidavit that:

> Prior to this accident, I had no reason to believe this *derail* would be difficult to operate. If the derail had been operating properly it would not have been stiff or hard to operate. *I believe the derail was not maintained or inspected properly.* (emphasis added).

Beeber Affidavit, p. 2.

■ A party cannot create a genuine issue of fact by directly contradicting their earlier testimony. *Holland v. Jefferson Natl. Life Ins. Co.*, 883 F.2d 1307 (7th Cir.1989). Plaintiff's affidavit directly contradicts his earlier deposition. The court in *Babrocky v. Jewel Food Co.*, 773 F.2d 857 (7th Cir.1985), stated that the purpose of the summary judgment motion is to weed out unfounded claims, specious denials and sham defenses. A court is not required to consider an affidavit that contradicts an earlier deposition admission. *See generally Holland*, 883 F.2d 1307, *Diliberti v. United States*, 817 F.2d 1259 (7th Cir.1987) and *Babrocky*, 773 F.2d 857. Plaintiff fails to explain the disparity between his deposition statements and his affidavit statements. The affidavit statements are little more than "bald assertions" insufficient to create a conflict with the deposition testimony. *Id.*

Therefore, the plaintiff has offered the court his inadmissible lay opinion as to the cause for the defective derail; even if this opinion were allowed to stand it does not raise the inference that the defendants

knew, or should have known, of the derail problems; and finally the opinion is so totally at odds with his earlier deposition testimony that it should not be considered at all.

**B. *Statements by Other Individuals***

■ The next evidence plaintiff seeks to use in support of his claim is a discussion he had with Mr. Boneff and Mr. Stuerzenberger, both members of the "yard crew".[5] Plaintiff's Answer Brief, p. 4. The substance of their conversation, as related in plaintiff's deposition is as follows:

> Q. Now what did Mr. Bonnif [sic] at some point in time tell you about that derailer?
>
> A. Well, I went and approached them and asked if they experienced difficulties after I got injured on that and they said yes, that derailer has been reported before about being hard to throw.
>
> * * * * * *
>
> Q. Did you ever talk with anybody besides Mr. Bonnof [sic] and Mr. Stutzenberger [sic] about that derailer?
>
> A. Not that I remember.
>
> Q. Did they indicate to you that they had reported that derailer as being a problem?
>
> A. When I talked to them I was under the impression that it had been reported. Now whether they did it themselves, I don't know.

Beeber Deposition, pp. 71–73. These statements can only be considered, of course, if they would be admissible into evidence. Fed.R.Civ.P. 56(e).

The first problem with this testimony is that it is hearsay. Hearsay is defined by Rule 801(c) and states:

> "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Fundamentally, the declarants here are Boneff and Stuerzenberger. The statements were not made while testifying in court, and the precise reason they are being of-

---

**5.** Exactly who the "yard crew" is, and what they do, has never been disclosed.

fered at all is to prove that the derail was difficult to throw and had been reported. At bottom it is hearsay.

Of course, some limited statements are, by definition, "not hearsay". For example, statements offered against a party which were made by the party's agent, and which concern a matter within the scope of the agency or employment and which were made during the existence of the employment relationship or agency are not hearsay. Fed.R.Evid. 801(d)(2)(D). However, each element of Rule 801(d)(2)(D) must be satisfied before the statement will be admitted. *Eastman v. United States*, 212 F.2d 320 (9th Cir.1954), *overruled on other grounds, United States v. Demma*, 523 F.2d 981 (9th Cir.1975). The existence of an agency relationship must be shown by independent evidence. *United States v. Portsmouth Paving Corp.*, 694 F.2d 312 (4th Cir.1982). This law of admissions is primarily a law of agency, not evidence. *Compagnie De Navigation Fraissinet & Cyprien Fabre, S.A. v. Mondial United Corp.*, 316 F.2d 163 (5th Cir.1963).

An agent represents the principal and is subject to the principals control. *Flanagan v. Aaron E. Henry Community Health Services Center*, 876 F.2d 1231 (5th Cir.1989); *United States v. Koenig*, 856 F.2d 843 (7th Cir.1988). There is no evidence concerning any relationship between, or control over, Boneff and Stuerzenberger by defendant. Plaintiff simply states that Boneff and Stuerzenberger are members of the yard crew. Save this one fact, the court is left to speculate about the declarant's relationship with the defendant and what they do. The court cannot engage in such speculation. Finally, even if it could be construed that members of the yard crew were agents of defendant it still has not been shown that their statements were "within the scope of the agency or employment." Therefore, plaintiff has not brought the conversation within Rule 801(d)(2)(D).

Nor has plaintiff suggested that the statements fit within any exception to the hearsay rule. In sum, the statements are inadmissible and cannot be considered. Fed.R.Civ.P. 56(e).

Finally, even if we assume that the statements are somehow admissible they still run afoul of Rule 602 which requires that the personal knowledge of Boneff and Stuerzenberger be shown. The record fails to indicate whether Boneff and Stuerzenberger knew the derail was hard to throw from attempting to throw it themselves or from alleged reports made by others concerning the defective derail. The latter situation, of course, would also require compliance with Fed.R.Evid. 805 which also has not been attempted. For all these reasons this evidence is not admissible and cannot be considered.

### C. *Subsequent Remedial Measures*

■ As a final note, plaintiff observes that the derail was replaced sometime after his injury. Defendant of course disputes this. Plaintiff's aim here is gain the inference that if defendant had not been negligent, it would not have replaced the derail. Rule 407 makes inadmissible any evidence of subsequent remedial measures and states:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted or impeachment.

Fed.R.Evid. 407. On the basis of this rule, the evidence is inadmissible. The rule's exceptions are inapplicable since ownership, control or feasibility have not been controverted.

Therefore, even though a dispute exists concerning replacement of the derail, any dispute must concern a material issue of fact in order to defeat a summary judgment motion. *Anderson*, 106 S.Ct. at 2511. The fact disputed is not material.

## D. *Count I Summary*

The plaintiff must come forward with admissible evidence to support each element of his claim. *Celotex,* 477 U.S. 317, 106 S.Ct. at 2552; Fed.R.Civ.P. 56(e). He has failed to do so; therefore, defendant is entitled to summary judgment on this count.

## COUNTS II–IV

The court now turns to plaintiff's claims II–IV stemming from the August 30, 1988 incident.

As to Count II, also an FELA claim, the defendant takes the position that the broken knuckle was not the legal cause of any injury to plaintiff, and since the plaintiff's carrying the replacement knuckle was the sole proximate cause of his injury then he is not entitled to recover. Further, defendant suggests that it cannot be negligent with respect to the lack of adequate assistance because it made a co-worker available to help plaintiff if only he had asked.

■ The plaintiff, under an FELA scheme, is not held to the common law standard of proximate cause. *Crane v. Cedar Rapids & Iowa City R.R. Co.,* 395 U.S. 164, 166, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1969). Rather, the plaintiff need only prove that his injury resulted "in whole or in part" from the railroads violation of the act. *Id., citing,* 45 U.S.C. § 51. If the defendant's negligence, however slight, plays any part in producing plaintiff's injury, the defendant is liable. *Rogers v. Missouri Pacific R.R. Co.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); *Webb v. Illinois Central R.R. Co.,* 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503 (1957).

■ The Federal Employers' Liability Act places a duty upon the employer to provide a sufficient number of employees to perform assigned work. *Wilmoth v. Chicago Rock Island & Pacific R.R. Co.,* 486 S.W.2d 631 (Mo.1972). An employer's failure to provide adequate assistance to its employees can constitute a breach of the employer's duty under the FELA and will provide grounds for the employee to recover if such failure is the proximate cause of the injury. *Reynolds v. Atlantic Coast Line R.R. Co.,* 251 Ala. 27, 36 So.2d 102 (1948), *aff'd,* 336 U.S. 207, 69 S.Ct. 507, 93 L.Ed. 618 (1949).

Viewing the evidence most favorable to the plaintiff on his inadequate assistance claim it is noted that on August 30, 1988, the plaintiff, as the conductor, was riding in the caboose of a 100–car train and the engineer and brakeman were riding in the engine. When the train broke apart for whatever reason the engineer stayed with the engine and the plaintiff proceeded to "walk the train" to discover the problem. Apparently at the same time the brakeman was walking towards the caboose, although it was not expected that he would get there for thirty to sixty minutes. *See* Beeber Deposition, pg. 101. At the same time, the plaintiff was receiving numerous radio calls from the dispatcher as to the cause of the problem, and these caused the plaintiff to hurry "a little" such that he opted not to wait for assistance, but rather chose to single handedly undertake to replace the knuckle. *See* Beeber Deposition, pg. 101. The plaintiff's attempt to save time, and do his job (perhaps nudged along by the dispatcher's "numerous" inquiries) was the apparent motivating factor for not waiting until the brakeman walked back to the caboose. *See* Beeber Deposition, pg. 97.

■ The FELA negligence standard is that the defendant is liable if its negligence played any part, even the slightest, in producing the injury. *Rogers,* 352 U.S. at 507, 77 S.Ct. at 449; *Webb,* 352 U.S. at 516, 77 S.Ct. at 454. In applying that standard to these facts, there is sufficient evidence to allow the issue of inadequate assistance to be considered by the jury. In so doing, the jury is entitled to consider that the defendant may have been negligent, however slight, in putting an employee who had recently sustained a previous hernia injury, on a 100–car train with only two other employees well knowing that lengthy freight trains have separated in the past and that this required those employees on board to undertake replacement of the heavy knuckles. *See* Beeber Deposition pg. 85–86. Further, the jury would be entitled to infer that it was entirely foreseeable

that the defendant's placement of a knuckle in the caboose, with a single employee, on a lengthy train (together with the dispatcher's persistent importunings) would cause that employee to single-handedly undertake a hazardous repair of the knuckle. On this basis, there is a sufficient factual question such that summary judgment would be inappropriate. The fact that the plaintiff could have waited and did not, is a question of contributory negligence which does not act as a complete bar under the FELA. *Wilmoth*, 486 S.W.2d at 636–637. Consequently, the defendant's motion for summary judgment as to Count II on the claim of inadequate assistance will be denied.

The remainder of the defendant's motion for summary judgment on Counts II–IV focuses on the defendant's claim that the broken knuckle and the way it occurred is, by itself, too remote in the causal sequence to cause liability to attach to defendant under the FELA or either the SAA or BIA. This proximate causation issue necessarily intertwines because under the FELA the plaintiff must prove that the defendant's negligence was the proximate cause of his injury, and under the SAA and BIA (once a violation under either act has been established) the plaintiff must show that the injury sustained was proximately caused by a violation of the act. *See Chesapeake & Ohio R.R. Co. v. Carnahan*, 241 U.S. 241, 36 S.Ct. 594, 60 L.Ed. 979 (1916), and *Arbogast v. Pennsylvania R.R. Co.*, 343 Ill.App. 465, 99 N.E.2d 403 (1951). Defendant simply argues that the requisite causal connection between defendant's actions, and the plaintiff's injury is absent, *citing Wright v. The Cincinnati, New Orleans, and Tex. Pac. R.R. Co.*, 107 Ohio App. 310, 152 N.E.2d 421 (1958) for support. While *Wright* has some similarities to the facts of this case it is also distinguishable. First, the court in *Wright* seems to impose a greater requirement of proximity than the relaxed FELA causation standard adopted in *Rogers*. Second, the case is factually distinct because the court made much of the fact that the plaintiff, during the course of his attempt to find a knuckle, had "arrived at a place of safety" in the chain

of sequence that resulted from the breaking of the coupler. It was later entry into the oil covered nose of the diesel looking for a knuckle that prompted a new chain of events to occur. This case is distinguishable because at no time did the plaintiff ostensibly "arrive at a place of safety" in the chain of events.

Rather, this case is closer to *New York, New Haven, and Hartford R.R. Co. v. Leary*, 204 F.2d 461, 467 (1st Cir.1953). Under extremely similar facts, the First Circuit determined that a jury could reasonably find that a railroad conductor's fall from a trestle, while in the act of repairing a broken air hose, was a foreseeable risk created when the train stopped due to a defective air brake. In so doing, the court determined that "The foreseeability of the consequences of [the] breach should be left to the jury." *Leary*, 204 F.2d at 467. Under the minimal requirement of proximity recognized in *Rogers* a similar result should apply here and defendant's motion for summary judgment will be denied as to Counts II–IV.

## CONCLUSION

For the reasons stated above there is no genuine issue as to any material fact and defendant's motion for summary judgment is hereby GRANTED as to Count I of plaintiff's complaint and the plaintiff shall take nothing from the defendant on said Count.

Defendant's motion for summary judgment is DENIED with respect to Counts II through IV.