Willie James SEYMOUR, Plaintiff,

v.

ILLINOIS CENTRAL RAILROAD COMPANY, Defendant.

No. Civ.A. 3:96–cv–288WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

July 28, 1997.

James W. Nobles, Jr., James W. Nobles, Jr., Attorney, Jackson, MS, John P. Randolph, II, J. Peyton Randolph, II, Attorney, Jackson, MS, for Willie James Seymour, plaintiff.

Charles T. Ozier, Wise, Carter, Child & Caraway, Jackson, MS, for Illinois Central Railroad Company, defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

This lawsuit was tried before the court and a duly constituted eight-person jury on the dates of April 30 – May 1, 1997. At the close of plaintiff's case-in-chief, defendant urged its motion for judgment as a matter of law, brought pursuant to Rule 50,[1] Federal Rules

---

1. Rule 50 of the Federal Rules of Civil Procedure states in pertinent part:

    (a)(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable party to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

of Civil Procedure. By its motion, defendant challenges the juridical sufficiency of plaintiff's proof to entitle plaintiff to proceed any further with this lawsuit. Satisfied that defendant's motion has merit, this court hereby grants judgment to the defendant.

## I. *BACKGROUND*

The plaintiff here is Willie Seymour ("Seymour"). The defendant is plaintiff's employer, the Illinois Central Railroad Company ("Illinois Central"). Plaintiff couches his dispute under the Federal Employers Liability Act (FELA), Title 45 U.S.C. § 51.[2] The plaintiff alleges that on August 17, 1995, an anchor car machine on which he was riding struck a small gap in one of the rails on Illinois Central's tracks south of Baton Rouge, Louisiana. According to plaintiff, he was thrown from the car and subsequently injured. Seeking to hold his former employer liable for his accident and injuries, plaintiff charges that Illinois Central was negligent in failing to provide him with a safe place to work, failing to provide him with safe appliances with which to work, failing to cover or otherwise mark a five-inch gap in the track so as to prevent the anchor car from derailing, failing to close the gap in the track prior to the accident, and in instructing the operator of the motor car anchor machine to drive the machine across the gap when the supervisor knew there was a gap in one of the rails. (Complaint, ¶ 7).

Seymour called two liability witnesses at trial: Raymond Buggs, his supervisor; and himself. At the conclusion of the testimony of these two witnesses, the court inquired of Seymour's counsel whether Seymour intended to offer any further evidence on the issue of liability. Seymour's counsel informed the court that Seymour did not intend to offer any proof, although Seymour did intend to call two additional damage witnesses. Since all Seymour's liability evidence had been introduced, the court then entertained Illinois Central's motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a)(1) and 50(a)(2). Neither party objected to this approach, but, in fact, agreed that it was appropriate for the court to entertain the motion despite the fact that Seymour had not rested.

## II. *FACTS*

Seymour was hired by Illinois Central on July 6, 1995, as a machine car repairman. The subject incident occurred on August 17, 1995, during which time Seymour was still within his sixty-day probationary period and could be discharged with or without cause.

On August 17, 1995, Seymour was working with a track gang south of Baton Rouge, Louisiana. The track gang's job was to remove old rail on the tracks and lay new rail in its place. The new rail which was being laid was known as ribbon rail. Ribbon rail is laid in one-quarter mile lengths.

The Illinois Central track foreman on the job, Raymond Buggs, was notified of a five-inch gap between two pieces of ribbon rail. Seymour also learned of this gap and knew where it was. This gap either occurred the preceding day or developed during the preceding evening when temperatures caused the rail to contract.

(a)(2) Motions for judgement as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

**2.** Title 45 U.S.C. § 51 states:

Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, ...

for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purpose of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.

The crew was working in a southerly direction as it laid the new rail. The crew used several pieces of track equipment to lay this rail, including a back hoe, spike pullers, hydrospikers, and anchor car machines. As of the morning of August 17, 1995, only two anchor car machines remained north of the gap in the rail. These were the only two machines that would have to pass over the gap.

The first anchor car machine was directed over the gap by Raymond Buggs. Seymour watched Buggs direct the first anchor car over the gap at a slow rate of speed. Seymour testified that Buggs made certain that the operator of the first anchor car machine knew about the gap and that he went over it "real slow." He further testified that one had to be "real cautious" and "go real slow" when moving an anchor car machine over such a gap.

Raymond Buggs testified, and Seymour admitted, that Buggs instructed Seymour to notify the operator of the second anchor car machine, Arthur Clark, about the existence and location of the gap. Seymour was a college graduate with one year of work toward a masters degree. He admitted that he heard and understood Buggs' instructions. After being so instructed by Buggs, Seymour walked back to the second anchor car machine, which was being operated by Arthur Clark. Also on board this machine was another employee, Albany Crudup.

Plaintiff testified that he began repairing a chain on the anchor car machine. He then observed Raymond Buggs wave the second anchor car machine forward. Without notifying Clark or Crudup of the gap, Seymour sat down on the back of the anchor car machine, facing in the opposite direction from which it was traveling.

Seymour admitted that he simply forgot to tell Arthur Clark about the existence of this gap. He further opined that neither Clark nor Crudup knew of the existence of this gap. Additionally, he admitted that this gap could not be seen by anyone on the anchor car machine as it traveled down the tracks.

Predictably, then, the anchor car machine hit the gap. It was traveling approximately 5–10 miles per hour and derailed after encountering the gap. Plaintiff was thrown from the anchor car and injured.

Although plaintiff contends that a flare or flag should have been used to mark the gap, plaintiff admitted that the crew did not ever use flags or flares for this purpose. Raymond Buggs' testimony was uncontradicted that neither flags nor flares were necessary to do this job safely. Although a back hoe was available, the testimony was uncontradicted that the use of a back hoe to lift the anchor car machine over the gap similarly was not necessary in order to do this job safely.

Likewise, Raymond Buggs' testimony was uncontradicted that it was not necessary to patch or weld this gap together prior to attempting to cross the gap. Buggs further testified that cutting a length of rail and welding it in the gap would have caused the track to buckle since the sun causes the track to warm back up and expand.

## III. CONCLUSIONS OF LAW

### A. Standard

■ A motion for a judgment as a matter of law tests whether the evidence presented at trial is sufficient to create an issue of fact for the jury. *Conkling v. Turner,* 18 F.3d 1285, 1301 (5th Cir.1994). Thus, a motion for a judgment as a matter of law should only be granted where the facts and inferences of the case point so overwhelmingly in favor of the moving party that no reasonable jury could arrive at a contrary decision. *Stockstill v. Shell Oil Co.,* 3 F.3d 868, 870 (5th Cir.1993) (quoting *In Matter of Worldwide Trucks, Inc.,* 948 F.2d 976, 979 (5th Cir.1991)). In determining the propriety of a motion for a judgment as a matter of law

... the Court should consider all of the evidence—not just that evidence that supports the nonmover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that

reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury ... However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Guilbeau v. W.W. Henry Co.*, 85 F.3d 1149, 1161 (5th Cir.1996) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969)).

### B. *FELA*

■ In order to establish a claim under the FELA, plaintiff is required to prove the traditional common law elements of a negligence action, namely: negligence on the part of the employer, causation, and damages. *Armstrong v. Kansas City Southern R. Co.*, 752 F.2d 1110, 1113 (5th Cir.1985). The employer's duty to its employees under the FELA is to use reasonable care and prudence so that the work place and the appliances furnished are reasonably suitable and safe for the purpose and in the circumstances in which they are to be used. "The test is not whether the tools to be used and the place in which the work is to be performed are absolutely safe, nor whether the employer knew the same to be unsafe, but whether or not the employer has exercised reasonable care and diligence to make them safe." *Atlantic Coast Line R. Co. v. Dixon*, 189 F.2d 525, 527 (5th Cir.1951). Likewise, the employer is not required to furnish the employee the latest, best, or most perfect appliances with which to work, or to discard standard appliances already in use upon the discovery of later improvements, provided those in use are reasonably safe and suitable. *Id.*

■ Where the employee is guilty of negligence and his negligence is the sole cause of the accident, the railroad may not be held liable. It is the duty of the employee to exercise reasonable and ordinary care for his own safety. Failure to anticipate negligence on the part of the plaintiff is not actionable negligence on the part of the railroad. *Id.*

■ So, where an employee fails to exercise reasonable care to follow instructions of his employer, and such negligence is the sole cause of his injuries and damages, he may not recover under the FELA. *Dixon*, at 527; *Barnett v. Terminal Railroad Association of St. Louis*, 228 F.2d 756 (8th Cir.1956); *Chicago, St. P., M. & O.R. Co. v. Arnold*, 160 F.2d 1002 (8th Cir.1947); *Emig v. Erie L. Ry. Co.*, 350 F.Supp. 986 (W.D.Pa.1972); *Taylor v. Illinois Central Railroad Co.*, 8 F.3d 584 (7th Cir.1993); *Walden v. Illinois Central Gulf R.R.*, 975 F.2d 361 (7th Cir. 1992).

### IV. *ANALYSIS*

■ Here, Seymour has utterly failed to show any negligence on the part of Illinois Central. There is no proof whatsoever that the gap in the rail was caused by any negligent act or omission of Illinois Central. In fact, the uncontradicted evidence shows that such gaps normally occur when new rail is laid on railroad tracks.

The undisputed evidence establishes that both Raymond Buggs and Seymour were aware of the gap. Buggs showed Seymour how to direct an anchor car machine over the gap and instructed him to notify the operator of the second anchor car machine of the existence and location of the gap. This court concludes that as a matter of law Raymond Buggs exercised reasonable care by instructing Seymour to notify the operator of the second anchor car machine of the existence and location of the gap in the rail.

There is no evidence that operating the anchor car machine over the gap in the rail would have been dangerous or not reasonably safe had Seymour simply followed Buggs' instructions.

So, although other alternative methods of work may have been available such as the use of flares or flags to mark the gap, or the use of a back hoe to lift the anchor car machine over the gap, the mere existence of other alternatives does not establish negligence on the part of the railroad. *Stillman v. Norfolk & Western Ry. Co.*, 811 F.2d 834, 838 (4th Cir.1987), especially where such aids are not necessary for an employee to perform the job safely.

As earlier stated, the proof is undisputed that the responsibility for informing the op-

erator of the second anchor car machine of the existence and location of the gap lay with Seymour. Raymond Buggs had instructed Seymour to notify Clark of the gap and he failed to do so. His only explanation for this was that he "simply forgot." Therefore, as a matter of law, this court finds that the sole cause of the derailment on August 17, 1995, was the negligence of Seymour in failing to carry out specific instructions given by his employer. Seymour, thus, has failed to establish a legally sufficient evidentiary basis for a reasonable jury to find in his favor on the issue of liability and the court holds that Illinois Central is entitled to judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure.

Accordingly, this court hereby grants the motion of defendant Illinois Central Railroad Company for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. A separate Final Judgment shall be issued by the court.

**SO ORDERED AND ADJUDGED.**