Nathan MANSON, Appellant

v.

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION
AUTHORITY.

Commonwealth Court of Pennsylvania.

Argued Oct. 3, 2000.

Decided Nov. 6, 2000.

Publication Ordered Jan. 30, 2001.

Gregory L. Nester, Philadelphia, for appellant.

Richard E. Stabinski, Philadelphia, for appellee.

Before McGINLEY and LEADBETTER, Judges, and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Nathan Manson (Manson) appeals from the January 12, 2000 order of the Court of Common Pleas of Philadelphia County (trial court) that granted summary judgment in favor of the Southeastern Pennsylvania Transportation Authority (SEPTA). We affirm.

SEPTA employs Manson as a mechanic. On August 11, 1998, Manson filed a civil complaint against SEPTA pursuant to the Federal Employers' Liability Act (FELA),[1,2] alleging that on January 15, 1998, he sustained personal injuries during the course of his employment when a wooden ladder that he was standing on broke. In his complaint, Manson averred that SEPTA was negligent in failing to provide him with a safe work environment and safe work equipment.

---

1. 45 U.S.C.A. §§ 51–60 (West 1986).

2. Section 56 of the FELA provides that an action may be brought
   in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such

action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.
45 U.S.C.A. § 56. Manson's action was therefore properly within the jurisdiction of the trial court.

On November 1, 1999, SEPTA filed a motion for summary judgment averring that Manson failed to offer any evidence establishing that SEPTA had actual or constructive knowledge that the ladder was unsafe or defective. By order dated January 12, 2000, the trial court granted SEPTA's motion.[3] This appeal followed.

Manson maintains that he met his burden of demonstrating that SEPTA's negligence played a part in producing his injuries and that the Pennsylvania doctrine of spoliation should be applied against SEPTA. Manson therefore contends that the trial court's grant of summary judgment in favor of SEPTA was in error and should be reversed. On review, we are limited to determining whether the trial court committed an error of law or abused its discretion. *Sicuro v. City of Pittsburgh,* 684 A.2d 232 (Pa.Cmwlth.1996).

Section 51 of the FELA provides that:

[e]very common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.

45 U.S.C.A. § 51. Under the FELA, an employer has the duty to provide its employees with a reasonably safe work environment and safe work equipment. *Peyton v. St. Louis Southwestern Ry. Co.,* 962 F.2d 832 (8th Cir.1992). "If an employee is injured because of an unsafe condition, the employer is liable 'if its negligence played any part, even the slightest, in producing the employee's injury.'" *Id.* at 833 (quoting *Davis v. Burlington Northern, Inc.,* 541 F.2d 182, 185 (8th Cir.), *cert. denied,* 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 613 (1976)).

In order to present a prima facie case under the FELA, a plaintiff must demonstrate that

1) the plaintiff was injured while in the scope of his employment;

2) the plaintiff's employment is in furtherance of the railroad's interstate transportation business;

3) the employer was negligent; and

4) the employer's negligence played some part in causing the injury for which compensation is sought under the FELA.

3. Pursuant to Pennsylvania Rule of Civil Procedure No. 1035.2(1), a party may move for summary judgment "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report." Pa. R.C.P. No. 1035.2(1).

In considering a motion for summary judgment, the lower court must examine the whole record, including the pleadings, depositions, answers to interrogatories, admissions of record, if any, and affidavits filed by the parties. From this, the lower court will determine whether there is a question of genuine issue as to any material fact. *Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989).

*Smelser v. Norfolk and W. Ry. Co.*, 105 F.3d 299 (6th Cir.), *cert. denied*, 522 U.S. 817, 118 S.Ct. 67, 139 L.Ed.2d 29 (1997).

Under the FELA, the plaintiff must prove the common law elements of negligence: duty, breach, foreseeability, and causation. *Id.* The plaintiff must show that the employer, with the exercise of due care, "could have reasonably foreseen that a particular condition could cause injury." *Porreca v. Nat'l R.R. Passenger Corp.*, 1999 U.S. Dist. Lexis 4544, at *3, 1999 WL 199806, at *1 (E.D.Pa.1999) (quoting *Emig v. Erie Lackawanna Ry. Co.*, 350 F.Supp. 986, 988 (W.D.Pa.1972)). Foreseeability is an essential element of FELA negligence. *Brown v. CSX Transp., Inc.*, 18 F.3d 245 (4th Cir.1994).

▮▮▮▮ "In addition to causation, the [plaintiff] must show that the employer had actual or constructive knowledge of the hazardous condition. The [plaintiff] need not show actual or constructive knowledge 'if there is proof that the railroad could by reasonable inspection have discovered the defect.'" *Porreca* at *14, 1999 WL 199806 at *1 (quoting *Emig*, 350 F.Supp. at 988) (citation omitted). In a FELA case, where a plaintiff alleges that an employer failed to provide a reasonably safe place to work, the employer's knowledge of the unsafe condition is an essential element. *Riley v. Union Pac. R.R.*, 904 S.W.2d 437 (Mo.Ct.App.1995). Whether the employer had actual or constructive knowledge of an alleged hazardous condition is to be determined by the jury, *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), but only where the plaintiff has presented sufficient evidence to justify submitting the issue of knowledge to the jury. *Riley.*

Presently, Manson maintains that he sustained his prima facie case. Our review of the record, however, contradicts that contention. Manson relies on *Denver and Rio Grande W. R.R. Co. v. Conley*, 293 F.2d 612 (10th Cir.1961) to support his contention that SEPTA has a non-delegable duty to maintain and inspect its facility and equipment and that the issue of whether SEPTA had knowledge of the ladder's condition is a factual matter for the jury. Although we do not disagree with Manson's general proposition, we conclude that *Conley* does not relieve Manson of his obligation to prove that SEPTA had either actual or constructive knowledge of the allegedly unsafe ladder.

In *Conley*, the decedent sustained injuries to his back when he was thrown from a switch engine that was riding over a faulty section of track. The track was not owned or maintained by the railroad. As a result of his injuries, the decedent underwent back surgery and, during the course of that surgery, a tooth was jarred loose from the decedent's mouth. An infection resulted from the loose tooth and consequently, the decedent died from pneumonia.

Erma Conley, decedent's widow and the administratrix of his estate, brought an action against the railroad under the FELA. The matter proceeded to a jury trial, which rendered an award in Mrs. Conley's favor. The railroad appealed to the Circuit Court, arguing, *inter alia*, that Mrs. Conley failed to establish that the railroad did not provide decedent with a safe workplace and that the railroad had chargeable knowledge of the unsafe condition of the track.

The *Conley* Court rejected the railroad's position that since it did not own the track, it was relieved of liability. The Circuit Court found it irrelevant that the railroad did not own the track because the railroad had a non-delegable duty to provide decedent with a safe work environment. The Court further commented that the issues of whether the track was unsafe and whether the railroad had knowledge of that condition were factual matters for the jury and *that it would only overturn the verdict when there was a complete absence of probative facts.* In *Conley*, there was ample evidence to prove that the track had become dangerously deteriorated after

more than thirty years of use. Thus, the Circuit Court concluded that the duty placed upon the railroad to inspect the tracks over which it moved its trains imputed to it constructive knowledge of the unsafe condition.

Presently, there are no probative facts that weigh in Manson's favor. As the trial court noted, Manson testified during his deposition that he had used the ladder the previous week without incident, that he had used it earlier the day of the incident and that it appeared fine. (Reproduced Record "R.R." 42, 46–49, 54, 70) Manson further stated that had the ladder appeared rickety, he would not have used it. (R.R. 47) He observed others use the ladder the day of his alleged injury without incident. (R.R. 45)

In addition, SEPTA submitted the affidavit of Steven Hilbert, Director of SEPTA's Wayne Junction Car Shop. (SEPTA's Motion for Summary Judgment, filed November 1, 1999, Exhibit D) In his affidavit, Mr. Hilbert stated that SEPTA purchased the ladder in January of 1997 (thus, the ladder was less than a year old at the time of Manson's alleged injury) and that SEPTA did not receive any complaints prior to Manson's alleged accident pertaining to the ladder's condition. *Id.* Mr. Hilbert further noted that there were no prior incidents involving the ladder and that it was in good operational conditional and free from defects before Manson's supposed accident. *Id.*

In further support of its motion for summary judgment, SEPTA submitted the affidavits of Juan Pagan, Pernell Price, William Brown, and Jose Lopez. (SEPTA's Motion for Summary Judgment, Exhibits G–J) With the exception of Mr. Lopez, each affiant stated that he used the ladder involved in Manson's incident prior to the accident on numerous occasions and did not experience any problems with the ladder. (*Id.* at Exhibits G–I) Mr. Lopez stated

in his affidavit that he did not recall using the ladder involved in the incident. (*Id.* at Exhibit I)

Thus, there was not a scintilla of evidence presented to the trial court that would establish that SEPTA had actual or constructive knowledge of the allegedly dangerous condition of the ladder or that Manson's alleged injury was foreseeable or could have been discovered through reasonable inspection of the ladder. Thus, Manson failed to sustain a required element of his prima face case under the FELA.

Manson further offers that SEPTA cannot claim that he could not prove that the ladder was unsafe because SEPTA disposed of the ladder immediately after the incident.[4] In Pennsylvania, the doctrine of spoliation provides that a party may not benefit from its own destruction or withholding of evidence. *Duquesne Light Co. v. Woodland Hills Sch. Dist.*, 700 A.2d 1038 (Pa.Cmwlth.1997). The doctrine attempts to compensate those whose legal rights are impaired by the destruction or withholding of evidence by creating an adverse inference against the party responsible for the destruction or withholding. *Id.* It permits the jury to infer that the "spoiled" evidence would be unfavorable to the position of the spoliator. *Id.*

Manson maintains that because SEPTA disposed of the ladder, he is entitled to the presumption that it was defective. Assuming *arguendo* that the doctrine of spoliation is applicable, Manson is not relieved of his burden to demonstrate that SEPTA had knowledge of the ladder's allegedly unsafe condition.

In *Beeber v. Norfolk Southern Corp.*, 754 F.Supp. 1364 (N.D.Ind.1990), Beeber alleged injuries resulting from supposed violations of the FELA and the Safety

---

**4.** The record demonstrates that after Manson allegedly fell off of the ladder, it was placed in

a dumpster.

Appliance Act.[5] In an attempt to show the railroad's negligence and defeat a motion for summary judgment, Beeber offered 1) his own opinion that the railroad failed to properly inspect and maintain its equipment, 2) hearsay opinions of others indicating that the railroad's equipment was defective and 3), evidence that the equipment had been replaced after his alleged injuries.

In addressing Beeber's testimony that the railroad's equipment was defective, the District Court concluded that even accepting Beeber's testimony as evidence of the defective condition, his testimony fell short of establishing a cause of action under the FELA. The District Court stated that

> [u]nder [FELA], the presumption prevails, even after proof of the defect, that the railway company was not aware of its existence; and until it is shown that the railway company knew, or in the exercise of ordinary care should have known, of the defect, it is not charged with that knowledge.

*Id.* at 1369.

Thus, even assuming that Manson is entitled to the presumption that the ladder was unsafe, he nevertheless failed to show that SEPTA knew of, or in the exercise of reasonable care, should have known the ladder's condition. The presumption of an unsafe ladder does not impute actual or constructive knowledge of that condition to SEPTA. *Beeber.* Where Manson failed to establish a necessary element of his cause of action, we conclude that the trial court properly granted SEPTA's motion for summary judgment. *See Smelser; Brown; Peyton; Porreca; Beeber.*

The order of the trial court is affirmed.

### *ORDER*

AND NOW, this 6th day of November, 2000, the January 12, 2000, order of the Court of Common Pleas of Philadelphia County is AFFIRMED.