WRIGHT, APPELLEE, *v.* THE CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY CO., APPELLANT.*

(No. 8429—Decided June 23, 1958.)

*Mr. Otto F. Putnick* and *Mr. LeLand Jones,* for appellee.
*Messrs. Harmon, Colston, Goldsmith & Hoadly, Mr. Henry B. Street* and *Mr. Walter Bortz,* for appellant.

LONG, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County, where-

*Motion to certify the record overruled, December 10, 1958.

in the plaintiff recovered a judgment of $32,000 against defendant.

As briefly as they can be stated, the facts are that plaintiff was employed by defendant as a fireman at the time of the injuries of which he complains. The defendant operated a train in interstate commerce, and, of course, is amenable to the Federal Employers' Liability Act (Section 51 *et seq.*, Title 45, U. S. Code). The train on which plaintiff was working was proceeding north through Tennessee; as it approached King's Mountain, the engineer received a block signal, necessitating the bringing of the train to a sudden stop; as a result of which a knuckle on a coupler of one of the cars, some forty cars to the rear, was broken; in some manner this interfered with the brake pressure; and thereupon, the train "was parted" at the point of the broken knuckle. Then it was, that the conductor, who was in charge of the defendant's train, ordered the plaintiff to go forward and flag a southbound train which was about due at King's Mountain, for the purpose of securing a new knuckle. Plaintiff succeeded in boarding the southbound train in conformity to a radio message from the conductor of the train on which plaintiff was riding. The knuckle from the southbound train was thrown off at the place where the northbound train was parted, and plaintiff jumped off the engine of the southbound train and mounted the diesel engine of his own train. At this point, plaintiff sat in the cab of the engine and talked to his engineer for about seven or eight minutes. It was discovered that the knuckle thrown off by the southbound train would not fit, and the conductor ordered the plaintiff to try the knuckles contained in the nose of the diesel of their own train. Plaintiff entered the nose compartment of the diesel, which, he testified, was littered with supplies, knuckles, knuckle pins, a big chain, dope buckets and waste material saturated with oil. He testified further that there was oil on the floor and that the nose compartment was not lighted, that he found a knuckle which would fit, and that, as he was throwing the knuckle out of the door of the nose compartment, his body twisted and he slipped and fell, causing the injuries about which he complains.

Plaintiff, in his petition, alleges among other things that the operation of the train with a defective coupler constitutes a violation of the Federal Safety Appliance Act, that such viola-

tion amounts to negligence as a matter of law, and that as a result he is entitled to recover damages for the injuries so sustained.

Defendant admits that under the Federal Employers' Liability Act the breaking of the coupler amounts to negligence, but it says that such negligence was not the proximate cause of the injuries to the plaintiff. It is upon this point that the parties are violently opposed.

Defendant raises six assignments of error, and it is with the first three that this court is concerned.

Defendant claims that all the evidence from the breaking of the coupler to the entrance of the plaintiff into the nose of the diesel was irrelevant and inadmissible, for the reason that there is no causal connection between such evidence and the injuries of the plaintiff. Considering this evidence most favorably in favor of the plaintiff, it has, at least, historical value only, for the purpose of showing the sequence of events leading up to the plaintiff's entering the nose of the diesel. We hold, therefore, that it was admissible in evidence.

Coming to the second assignment of error, namely, that the court erred in construing Section 2317.52 of the Revised Code, this court agrees that the Legislature might have been more specific in what it intended. However, considering this section in connection with the sections which permit cross-examination by an adverse party, Section 2317.52, Revised Code, should not be construed to mean that anybody who is an agent or works for an adverse party may be called as if on cross-examination. The statute says that "when the action * * * relates to a transaction or occurrence in which it has been shown or it is admitted that the adverse party acted either in whole or in part through an agent * * * such agent * * * may be called as a witness and examined as if under cross-examination." To this court, this language means that for an agent to be called as if on cross-examination it must appear that the agent has some knowledge of a fact or facts which is or are relevant to the transaction or occurrence which gives rise to the action or proceeding. While we think that we have stated the meaning of the statute, we admit that its application will be attended with difficulty. However, this is not the fault of the courts. As we interpret Section 2317.52, Revised Code, the conductor of the

train on which the plaintiff was riding certainly had knowledge of many of the facts having to do with the "occurrence" leading up to the time of plaintiff's injuries; he, therefore, was subject, under the statute, to cross-examination on those matters.

We now come to that part of the third assignment of error wherein it is claimed that the trial court erred (a) in giving charge No. 1 requested by plaintiff, and (b) in that part of the general charge dealing with the applicability of the Federal Safety Appliance Act. Since both these claims have to do with the proximate cause, we shall discuss them together.

In special charge No. 1, requested by the plaintiff and given by the court, the court instructed the jury that if it found by a preponderance of the evidence that plaintiff's injuries were proximately caused, in whole or in part, by the defective brakes and the failure of the coupling device to remain coupled, then its verdict must be for the plaintiff. In its general charge, the trial court used similar language in defining the applicability of the Federal Safety Appliance Act (Section 1 *et seq.*, Title 45, U. S. Code). In our opinion, this constitutes reversible error. As we view the facts in this case, the injuries to plaintiff were occasioned by what happened in the nose of the diesel engine. If the defendant is to be held liable in this case, it must result from the failure of some duty, if any, it owed to the plaintiff in his use of the compartment in the nose of the diesel. The breaking of the coupler had nothing to do with plaintiff's injuries. While the federal act seems to make a violation of its provisions negligence per se, yet a person injured thereby has the duty of showing that such violation is the proximate cause of his injuries. Mere incidents in the chain of events causing injuries resulting from violation of the federal act can not be the basis for compensation. In our opinion, the confusion arises in cases of this kind from the fact that the law does not recognize the philosophic in determining cause. It is true that if the coupler had not broken plaintiff might not have been injured. Socrates could well have reasoned that if plaintiff had not been given a job with defendant he would not have been injured. Suppose plaintiff had been injured when he jumped off the southbound train, could it be said that the breaking of the coupler was the proximate cause of his injuries; what if the train had pulled into Cincinnati, and plaintiff was taking the

broken knuckle to the round house to have it fixed and while there he stumbled into a pit? Is there no limit to the incidents which might arise resulting from the broken coupler, for which liability might attach to the railroad? Sylogistic deductions can in no case be substituted for legal cause. Such deductions may be too remote. Where a cause is patently remote, the court should not leave it to a jury to decide otherwise. There must be a proximate cause; the violation of the federal act must directly and proximately cause the injuries; its violation must be the real cause, or the cause, without which, the injuries would not have occurred.

There is no question about the law on this subject of proximate cause. It is the application of the rule which causes the difficulty. Even though the federal act practically makes the railroad company an insurer against the failure of a coupling device, yet the decisions are to the effect that such failure must have a causal connection between it and any injuries for which liability is claimed against the railroad company.

In the case at bar, the evidence is clear that after the failure of the coupler the plaintiff alighted from his train, flagged a southbound train, mounted the cab of the diesel of the latter train, dismounted therefrom, mounted his train again, and sat talking for seven or eight minutes with his engineer. In the language of one of the cases, he had "arrived at a place of safety" in the chain of sequence, resulting from the breaking of the coupler. It was then that he entered the nose of the diesel on his train; a new chain of events was in the making; it was the result of the condition of, and situation in, this latter compartment, combined with his act of throwing out the knuckle, that was the efficient cause of his injuries. How could such an event become a link in an unbroken chain of events, which the railroad company should reasonably anticipate might result? In *Brady, Admx., v. Southern Ry. Co.*, 320 U. S., 476, 88 L. Ed., 239, 64 S. Ct., 232, this very question was decided in favor of the railroad company. Many cases have been cited by both parties to this suit, some of those in favor of the plaintiff, and cited by appellee, are cases where the plaintiff, an employee of the railroad company, was seeking the source of the trouble at the time or was in the process of attempting a repair of a defective part and received injuries in so doing. This is a very different

situation from the one we have in the case at bar. In all of the cases cited by appellee, the courts point out that the injured employee was subjected to hazards of bad weather, faulty roads, or unperceived conditions of the premises. In all these cases, the question before the court was "just what danger or risk is created by the defective equipment?" *New York, New Haven & Hartford R. Co.* v. *Leary,* 204 F. (2d), 461, decided May 14, 1953.

What dangers or risks were presented in the case at bar as the result of the defective coupler? Flagging the southbound train and jumping off the same might have presented some risk or danger, but these events are too remote to be considered proximate causes. Was there any danger or risk in going into the nose of the diesel and slipping on an oily floor while throwing out a knuckle? In the first place we cannot conceive of this performance as a risk or danger. Secondly, should the defendant be charged with anticipating that if a coupler broke and one of its employees had occasion to enter the nose of the diesel, he might meet with an accident of the kind described by the plaintiff? We think not. In all of the federal cases, without exception, violation of the Federal Safety Appliance Act must be the proximate cause to establish liability.

Likewise, we are not without authority in Ohio on this question of proximate cause. In the case of *McNees* v. *Cincinnati Street Ry. Co.,* 152 Ohio St., 269, 89 N. E. (2d), 138, the decedent's widow was claiming death benefits from the Industrial Commission, because her husband was "subjected to unusual physical and nervous strain through the necessity of driving his bus through an extraordinarily heavy fog." The sixth paragraph of the syllabus in that case is: "An injury does not arise out of the employment, within the meaning of the Workmen's Compensation Act, unless there is a proximate causal relationship between the employment and the injury."

Prior to the decision in the *McNees case,* the Supreme Court seemed to indicate that a mere finding of a causal connection between the employment and the injury was sufficient to sustain a finding against the Industrial Commission. (Judge Taft's opinion, page 275.)

However, in the *McNees case,* the Supreme Court now requires more than a cause. Remote cause is not sufficient. The

seventh paragraph of the syllabus in that case is: ''Even where there is substantial evidence tending to prove that the employment was a probable cause of an injury, such evidence will not require a finding, as a matter of law, that there was a proximate causal relationship between the employment and the injury where there is other substantial evidence tending to prove that something apart from the employment could have caused the injury. * * *''

Having concluded that the breaking, or the failure of the coupler, could not have been the proximate cause of plaintiff's injuries, we find that the giving of special charge No. 1, requested by the plaintiff, and the court's general charge with reference to the applicability of the Federal Safety Appliance Act, constitute reversible error.

We find no other errors apparent upon the record.

The judgment of the Court of Common Pleas is reversed and the cause is remanded to that court for a new trial and further proceedings according to law.

*Judgment reversed and cause remanded.*

HILDEBRANT, P. J., concurs.

MATTHEWS, J., concurring. I have no difficulty in concurring in the reversal of this judgment, for the reasons set forth in the opinion of the court, but my doubts relate to the order remanding the cause for a new trial. My first thought was that final judgment should be rendered.

In the opinion of the court, this explanation is made of the circumstances surrounding the plaintiff's injuries: ''As he was throwing the knuckle out of the door of the nose compartment, his body twisted and he slipped and fell, causing the injuries about which he complains.''

No other person was in the compartment at the time. No employee of the defendant was present at that time, and no employee had done any act theretofore that in any way had anything to do with the action of the plaintiff in throwing the knuckle, or in twisting his body, or in slipping or falling.

However, it is true that there was evidence that there was oil on the floor of the compartment, and that there was evidence

that the lighting was insufficient, but there is very little, if any, evidence that these conditions had anything to do with his twisting, or slipping, or falling.

Furthermore, the plaintiff knew all about the condition of this compartment when he entered it to get the knuckle.

It is true that by Section 54, Title 45, U. S. Code, it is provided that:

"In any action brought against any common carrier under or by virtue of any of the provisions of this Chapter [Sections 51 to 60 of Title 45] to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier; and no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

But that section does not make the common carrier an insurer of the safety of the employee while he is in and about the business of the carrier. There must be some fault attributable to the employer as a basis of liability.

The only possible fault that the record shows on the part of the employer is in allowing the floor to become "saturated" with oil. And it is that circumstance that causes me, with many doubts, to concur in remanding this case for a new trial.

It is certainly not clear that the condition of the floor had anything to do with the slipping by the plaintiff. Perhaps, an inference might be drawn that it did.

The plaintiff described the condition of the floor of the nose compartment, and, perhaps, an inference might be drawn that the employer was responsible for that condition, and, on account of the fact that it was widespread the carrier was negligent in failing to remedy it within a reasonable time.

While entertaining these doubts, I have concluded to concur in reversing the judgment and remanding the case for a new trial, at which these doubts may be resolved one way or the other.