Robert **RUYLE** and Elizabeth **Ruyle;** **Harvey Fransen** and **Marjorie Fransen;** **George Fransen** and **Yvonne Fransen;** and **James M. Fransen, Plaintiffs–Appel-** **lees/Cross–Appellants,**

v.

**CONTINENTAL OIL CO.,** Defendant– Appellant/Cross–Appellee.

Nos. 92–6402, 92–6411.

United States Court of Appeals, Tenth Circuit.

Dec. 20, 1994.

Clyde A. Muchmore of Crowe & Dunlevy, Oklahoma City, OK (Harvey D. Ellis, Jr., of Crowe & Dunlevy, Oklahoma City, OK, and Charles Puckett of Conoco, Inc., Houston, TX, with him on the briefs), for defendant-appellant/cross-appellee.

Michael J. Rovell, Chicago, IL (Stephen Jones and Michael D. Roberts of Jones & Wyatt, Enid, OK, and Richard E. Hornbeek of Hornbeek, Krahl & Vitali, Oklahoma City, OK, on the brief), for plaintiffs-appellees/cross-appellants.

Before SEYMOUR, Chief Judge, and LOGAN and ANDERSON, Circuit Judges.

SEYMOUR, Chief Judge.

Continental Oil Co. (Conoco) appeals the district court's refusal to hold plaintiffs' action collaterally estopped by a prior decision of the Oklahoma Corporation Commission. We conclude that the district court erred in failing to give the Corporation Commission order preclusive effect, and we therefore reverse.

## I.

Robert and Elizabeth Ruyle, Harvey and Marjorie Fransen, George and Yvonne Fran-

sen, and James M. Fransen (plaintiffs) own mineral interests underlying certain portions of section 14 in Custer County, Oklahoma. Continental Oil Co. (Conoco) is the lessee of the mineral interests owned by the Fransen plaintiffs. Plaintiffs sued Conoco alleging that offsetting wells were draining the productive formation underlying section 14, that Conoco had failed to protect the section from drainage, and that Conoco had failed to prudently develop the section.[1] A jury awarded plaintiffs total actual damages of $55,898.70 and total punitive damages of $1,140,000.00. In addition, the trial court ordered that Conoco either release its leases or, within 120 days, drill an additional offset well as required to fully develop the leases and to protect against drainage. Conoco contends on appeal, inter alia, that plaintiffs are estopped from recovering on their claims by an order of the Oklahoma Corporation Commission (Commission) allegedly addressing the same claims plaintiffs make here and ruling that no uncompensated drainage was occurring, that Conoco had acted prudently, and that an additional well was not necessary and would in fact result in damage to the correlative rights of owners in adjacent sections.[2]

In order to prevent waste and to protect the correlative rights[3] of interested parties in a common source of oil or natural gas, the Commission is statutorily authorized to establish well spacing units. See Okla.Stat., tit. 52, § 87.1 (1993); see also Samson Resources Co. v. Corporation Comm'n, 702 P.2d 19, 22 (Okla.1985). The Commission is likewise empowered to authorize the drilling of an additional well or wells as may be necessary to prevent waste and to protect correlative rights. Id. Pursuant to this authority, the Commission established the original well spacing for section 14 and the adjacent sections.

In October 1990, Great Bear Exploration, Inc. (GBE), who was also an interest holder in section 14, filed applications with the Commission seeking an exception to the original spacing order and an amendment to the order to permit GBE to drill an additional well in section 14. GBE alleged the exception and amendment were necessary "to prevent waste and to protect correlative rights." Aplt. app., vol. III, at 355; see also id. at 359. In January 1991, plaintiffs executed agreements with GBE authorizing it to act on their behalf before the Commission and stating their belief that the existing well in section 14 was not adequately protecting against drainage by offset wells in sections adjacent to section 14. Shortly thereafter, plaintiffs filed motions to intervene in GBE's proceedings before the Commission, stating that they supported GBE's applications and desired to appear at the hearings on those applications to present arguments and/or evidence. The initial report of the administrative law judge (ALJ) reveals that plaintiffs did in fact appear at the hearings through their attorney in support of GBE's application.

The evidentiary hearings before the ALJ took place in January, February, and March of 1991. After hearing extensive evidence on the relief sought by GBE, the ALJ concluded on May 2, 1991, that the applications should be denied. The ALJ held that Conoco had

---

1. Although the Ruyle plaintiffs hold mineral interests underlying section 14, they are not under a lease with Conoco. They therefore asserted a claim against Conoco only for breach of fiduciary duty.

2. In addition to its collateral estoppel argument, Conoco challenges the award of punitive damages and asserts that the court erroneously instructed the jury on tolling the limitation period for plaintiffs' noncontractual claims. Plaintiffs cross-appeal the court's refusal to award them attorneys' fees under Oklahoma law. In view of our holding that the Commission's order precludes plaintiffs' claims, we need not address these other arguments.

3. The Oklahoma Supreme Court has defined correlative rights as follows:

The term "correlative rights" has been defined as a convenient method of "indicating that each owner of land in a common source of supply of oil and gas has legal privileges as against other owners of land therein to take oil and gas therefrom by lawful operations conducted on his own land, limited, however, by duties to other owners not to injure the source of supply and by duties not to take an undue proportion of the oil and gas".

Samson Resources Co. v. Corporation Comm'n, 702 P.2d 19, 22 (Okla.1985) (quoting Kingwood Oil Co. v. Corporation Comm'n, 396 P.2d 1008, 1010 (Okla.1964)).

shown an additional well was not necessary and that the existing well could adequately drain the hydrocarbons underlying the unit. The ALJ further concluded that "[t]o grant an additional well would not be in the interest of the prevention of waste and the protection of correlative rights." Aplt. app., vol. III, at 388. GBE and plaintiffs filed exceptions to the ALJ's initial report, which was upheld by the appellate ALJ. GBE and plaintiffs in turn filed exceptions to the appellate report which was upheld by the Commission on January 13, 1992. GBE appealed the order to the Oklahoma Supreme Court, and the order was affirmed on March 30, 1993.

Plaintiffs filed their original petition in this action in state court on February 22, 1991, while the administrative proceedings were pending. Conoco subsequently removed the action to federal court, and thereafter filed a motion for summary judgment based on the preclusive effect of the Commission order. On February 20, 1992, the district court entered an order denying Conoco's motion for summary judgment. The court ruled, inter alia, that the doctrine of collateral estoppel did not require the Commission's ruling to be given preclusive effect. The court based its decision upon its conclusion that Conoco had not made the requisite showing that plaintiffs were either parties to the Commission proceedings or privies with GBE, nor had Conoco shown that the Commission proceedings afforded plaintiffs an effective opportunity to litigate.[4]

On appeal, Conoco reiterates its argument that collateral estoppel bars plaintiffs' entire theory of the case. Conoco contends that this court's opinion in *Leck v. Continental Oil Co.*, 971 F.2d 604 (10th Cir.1992), handed down after the jury trial in this case, is dispositive on the issue. Conoco also argues that a state statute specifically prohibits plaintiffs' collateral attack on the Commission's order. In response, plaintiffs assert that Conoco failed to preserve and/or abandoned its collateral estoppel defense. Alternatively, plaintiffs assert that collateral estoppel does not apply because the privity requirement is not met, because the issues resolved before the Commission were not the same as those plaintiffs raise in this proceeding, and because the Commission's order was not final at the time the district court ruled on Conoco's summary judgment motion. For the reasons set out below, we conclude that Conoco has clearly preserved for appeal the collateral estoppel issue. We further hold that Conoco has established the applicability of both the doctrine of collateral estoppel and the state statute prohibiting collateral attacks upon Commission orders.

## II.

We turn initially to plaintiffs' arguments that the collateral estoppel issue is not properly before us on appeal. Plaintiffs first contend that Conoco failed to preserve this issue because it did not raise the matter in its motions for a directed verdict or for judgment as a matter of law. We disagree. Motions under Fed.R.Civ.P. 50(a) for judgment as a matter of law test whether there is a "legally sufficient evidentiary basis for a reasonable jury to find" for the moving party. These motions thus challenge the sufficiency of the evidence rather than the correctness of questions of law. A party who properly raises an issue of law before the case goes to the jury "need not include the issue in a motion for a directed verdict in order to preserve the question on appeal." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1370 (9th Cir.1987); *see also Jurgens v. McKasy*, 927 F.2d 1552, 1557 (Fed. Cir.), *cert. denied*, 502 U.S. 902, 112 S.Ct. 281, 116 L.Ed.2d 232 (1991); 9 C. Wright & A. Miller, *Federal Practice & Procedure*, § 2540, at 617 (1971) (when the trial court denies a Rule 50 motion, both that denial "and errors of law in the trial may be raised on appeal"). As described below, the parties and the trial court agreed that the issue of collateral estoppel was a legal question separate from the sufficiency of the evidence. Conoco may thus raise the issue on appeal

---

4. The court also expressed concern about whether the Commission order was final, noting that the parties had not advised the court whether an appeal had been taken to the Oklahoma Supreme Court. As we set out in text supra, the order was judicially affirmed during the pendency of this appeal.

notwithstanding its omission from Conoco's Rule 50 motions.

In arguing to the contrary, plaintiffs fail to make the critical distinction between summary judgment motions raising the sufficiency of the evidence to create a fact question for the jury and those raising a question of law that the court must decide. *See Jurgens,* 927 F.2d at 1557. Their reliance on *Whalen v. Unit Rig, Inc.,* 974 F.2d 1248 (10th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1417, 122 L.Ed.2d 787 (1993), is therefore misplaced. In their citations to *Whalen,* plaintiffs do not recognize that the case involved both types of motions and treated them separately. The defendants in *Whalen* filed "motions at various stages of litigation to challenge the sufficiency of the evidence," *id.* at 1250, which were denied. The defendants also filed a summary judgment motion that "challenged the legal sufficiency" of certain documents, claiming that they did not meet applicable statutory, requirements, *id.* at 1251. This motion was also denied.

In arguing here that Conoco cannot appeal the denial of summary judgment, plaintiffs mistakenly rely on language in *Whalen* directed at the appealability of the motions raising the sufficiency of the evidence. *See id.* at 1250–51. That discussion is not relevant to the appealability of the legal question at issue here.[5] It is true that in considering the motion raising the legal question, the court in *Whalen* originally held that the issue was not appealable because it had not been pursued in the defendants' motion for directed verdict. *See id.* at 1251 & n. 6. However, the court corrected this ruling on rehearing and held that the issue had in fact been preserved and that the court's previous refusal to consider it was erroneous. *See id.* at 1254. In arguing here that Conoco is barred

by its alleged failure to raise the issue in its motion for directed verdict, plaintiffs improperly rely on language from that portion of the original *Whalen* opinion that was modified on rehearing.

■■■■ Plaintiffs also assert that Conoco abandoned the issue below. In so doing, plaintiffs' argument fails to reflect accurately the entirety of the trial court proceedings on this issue. Conoco began arguing its motion for directed verdict by discussing the effect of the Commission order. The court questioned Conoco's counsel on the extent to which the court was bound by the Commission proceedings, and counsel voiced his belief that the court was not bound on the issue of drainage because the Commission cannot assess money damages. Aplee. app. at 7. After further discussion indicating some confusion and uncertainty on the part of counsel and the court, the court stated:

> [M]y inclination is to try to let this jury pass on as many of those factual determinations as is possible, in order to perhaps allow an appellate court ... to finally sort out these dichotomies and so forth as best they can, rather than for me to try to say I'm precluded, as a matter of law, or they are precluded, as matter of law, and so forth.

*Id.* at 9.[6]

In response, plaintiffs' counsel pointed out that the court had

> already ruled in denying the motion for summary judgment, which was a motion based upon a legal argument rather than factual, that the doctrines of collateral estoppel and res judicata or res judicata in the Corporation Commission's ruling on the Great Bear application, do not deprive

---

5. Plaintiffs' citation to *Cleveland v. Piper Aircraft Corp.,* 890 F.2d 1540, 1551 (10th Cir.1989), *cert. denied,* —— U.S. ——, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993), is likewise inapposite because the challenge there was to the sufficiency of the evidence.

6. The primary source of confusion appears to be the fact that the Commission has jurisdiction only to resolve conflicts which exist among correlative rights "within a common source of supply and thus affect[] the public interest in the protection of production from that source as a

whole." *Samson Resources,* 702 P.2d at 22. The Commission has no jurisdiction over "a dispute between private parties in which the public interest in correlative rights is not involved." *Id.* at 23. Plaintiffs argued below, and continue to argue on appeal, that their judicial proceeding is not barred by the Commission order because they are asserting only private rights. As we discuss in text infra Part IIIB, we disagree with plaintiffs' characterization of the nature of the rights asserted here.

this [c]ourt of jurisdiction to determine the private right dispute.

*Id.* at 15. Significantly, plaintiffs' counsel went on to state:

> [W]hile it may be an argument that he can raise on appeal, I believe this [c]ourt, as the district court, is bound to follow the precedents established, which are as I have stated, and the case should not have judgment entered in favor of the Defendants on the basis of anything the Corporation Commission has done.

*Id.* at 16. The record as a whole makes clear that neither the court nor plaintiffs' counsel viewed Conoco's motions argument as a forfeiture of its right to raise on appeal its claim that the Commission orders are preclusive.

■ Plaintiffs also premise their abandonment argument on Conoco's alleged failure to object when the court instructed the jury that it could consider the Commission's orders as evidence but could not consider them binding or conclusive. We find incongruous plaintiffs' argument that Conoco's failure to object to a jury instruction bars it from raising on appeal a legal issue that plaintiffs agreed was a matter for the court to decide. We point out that while Fed.R.Civ.P. 51 bars a party who does not object to the giving or the failure to give instructions from challenging on appeal the instructions given, Conoco here is not appealing the court's failure to give its proffered instructions. Rather, Conoco is contending that the court committed an error of law in ruling that the collateral estoppel doctrine is not applicable. Under these circumstances and in view of the position of the parties and the court which we have delineated above, we find no significance in Conoco's failure to object to the court's instructions.

## III.

■ Concluding that the issue is properly before us, we turn to the merits of Conoco's argument that the trial court erred in refusing to apply principles of collateral estoppel to the Commission's orders. We must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state in which the judgments were rendered." *Kiowa Tribe of Oklahoma v. Lewis,* 777 F.2d 587, 590 (10th Cir.1985), *cert. denied,* 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed.2d 171 (1986). The Oklahoma courts follow the Restatement in describing collateral estoppel as issue preclusion. *See, e.g., Wilson v. Kane,* 852 P.2d 717, 722 n. 23 (Okla.1993) (citing *Restatement (Second) of Judgments* § 27 (1982)). "Under issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, that issue may not be relitigated between the same parties or their privies in a suit on a different cause of action." *Id.* (emphasis omitted). Issue preclusion will prevent a collateral attack on a judgment only when the issue sought to be barred "has been 'fairly and fully' litigated" in the prior proceeding. *Veiser v. Armstrong,* 688 P.2d 796, 800 (Okla.1984).

### A.

■ The district court concluded Conoco failed to establish that plaintiffs were either parties to the Commission proceedings or in privity with GBE. Observing that plaintiffs were not the initial applicants before the Commission and were represented by separate counsel, the court held that plaintiffs did not sufficiently control GBE's course of conduct in those proceedings. These factors are not significant, however, when viewed in the totality of the circumstances.

■ Prior to the commencement of the initial hearings before the ALJ, plaintiffs executed agreements with GBE authorizing GBE to proceed before the Commission on plaintiffs' behalf. These agreements gave GBE the authority to pursue in plaintiffs' names any actions GBE deemed appropriate. In addition to executing these agreements, plaintiffs also filed a formal motion to intervene in the Commission proceedings under Okla.Stat., tit. 52, § 87.2 and the Corporation Commission Rules of Practice. "Once a person is permitted to intervene, he becomes a party-litigant in the case with the right to raise and litigate independent issues." *Teleco, Inc. v. Corporation Comm'n,* 649 P.2d 772, 773 n. 2 (Okla.1982). Although the record on appeal does not indicate whether the Commission formally granted plaintiffs' mo-

tion, the motion was not necessary to enable plaintiffs to participate as parties in the Commission proceedings. Oklahoma provides by statute that:

> [T]hose persons ... who are mineral owners or owners of the right to drill a well for oil and gas on the lands embraced within the subject area of an application or the owners of correlative rights within the common source of supply or supplies embraced within an application to the extent such owners are directly affected by such application, shall be proper parties to:
>
> . . . . .
>
> 3. present testimony or evidence at any hearing arising thereunder or relating thereto.

Okla.Stat., tit. 52, § 87.2A. Plaintiffs, as mineral owners on the lands covered by GBE's application, were thus statutorily designated as parties and entitled to present testimony and evidence. Finally, as recited above, plaintiffs did in fact appear in the hearings through their attorney. The Commission Rules of Practice state that "[e]very person appearing shall enter his appearance by stating his name and address. Thereafter, such person shall be deemed a party of record, unless specified otherwise." Aplt. supp. app. at 541. These circumstances clearly establish that plaintiffs were parties to the Commission proceedings as required to invoke the doctrine of collateral estoppel.[7]

### B.

 Plaintiffs argue on appeal that the issues resolved in the Commission proceedings were not the same issues presented at trial. They base this argument on the distinction drawn in Oklahoma law between the Commission's jurisdiction to protect the correlative rights of interested parties, that is, "all the rights and duties which exist between mineral owners with regard to a common source of hydrocarbon supply," and the court's jurisdiction to award damages in a controversy between two private concerns. *Pelican Prod. Corp. v. Wishbone Oil & Gas,*

*Inc.,* 746 P.2d 209, 211–12 (Okla.Ct.App. 1987); *see also Samson Resources,* 702 P.2d at 22–23. Plaintiffs contend that the judicial proceeding was one to enforce only private rights. Plaintiffs further argue that no preclusive effect should be given to the Commission's ruling that Conoco acted as a prudent operator because that holding was not necessary to decide the issues before the Commission. We disagree.

The administrative rulings establish that GBE based its application for an additional well on its claim that uncompensated drainage was damaging its correlative rights. Plaintiffs joined in that claim. The original ALJ order held that "the existing well could drain all of the hydrocarbons underlying the unit," and that

> the Section 14 well would be able to recover all of the hydrocarbons that Section 14 is entitled to recover. To grant an additional well would not be in the interest of the prevention of waste and the protection of correlative rights. As long as the Section 14 well is capable of recovering all of the hydrocarbons in the unit no additional well is necessary.

Aplt. app., vol. III, at 388. The appellate ALJ, in affirming the initial report, reviewed the evidence and stated that no uncompensated drainage was occurring because GBE had and was exercising a fair opportunity to extract oil and gas from the common source. *Id.* at 396. The Commission likewise concluded that GBE had not established the need for an additional well, pointing out that "correlative rights of all owners in the common source of supply must be considered," and that "[t]he operator of a unit like Section 14 is obligated to take only that unit's fair share of gas from a well in the unit." *Id.* at 403. The Commission further held:

> [T]here is an affirmative duty on the part of that operator to not only protect correlative rights of owners in Section 14, but also to avoid harming the rights of offset owners through the taking of a disproportionate share of gas in the common source

---

**7.** We likewise conclude that plaintiffs were presented with the requisite opportunity to fully and fairly litigate the issues before the Commission. Both the statute and the Commission rules permitting plaintiffs to appear as parties authorized them to present evidence and testimony and otherwise meaningfully participate in the hearing.

of supply. Protestants, including Conoco, have acted prudently in Section 14 by recovering a fair share of the gas but resisting the attempt of Great Bear to recover more than such fair share. Any drainage occurring in Section 14 is compensated for through production of the No. 1–14 Meacham well. To allow an additional well to be drilled and produced in Section 14 would result in damage to the correlative rights of owners in adjacent sections.

*Id.* The Commission's statement that Conoco acted prudently in its challenged operations was thus both a necessary and inevitable element of its determination that no improper drainage was occurring.

Plaintiffs stipulated below that "[t]he fiduciary duty owing from defendant Conoco to plaintiffs is the duty to conduct itself as a prudent operator." Aplt. app., vol. II, at 229. Likewise, the jury was instructed that "[i]n order to prevail on their claim for breach of fiduciary duty, the plaintiffs must establish ... that Conoco failed to act as a prudent operator." Aplt. app., vol. II, at 289. Nonetheless, plaintiffs now attempt to draw a distinction between the Commission's ruling that Conoco had acted prudently because no uncompensated drainage was occurring and plaintiffs' claim at trial that the court had jurisdiction to award damages for Conoco's breach of its fiduciary duty to protect against drainage. Such a distinction, however, is not supported by either logic or state law.

 As we pointed out in *Leck,* 971 F.2d at 606, "[d]rainage and correlative rights are, of course, directly related." In *Leck,* the mineral interest owners asserted before the Commission that the operator was permitting uncompensated drainage to occur by allowing production from another well in the same producing formation. After the Commission determined that their correlative rights were not being violated, the min-

eral owners filed suit alleging breaches of contract and of fiduciary duty for failure to protect against drainage. We held that the Commission's ruling collaterally estopped the owners from asserting that uncompensated drainage had occurred, pointing out that the Commission's finding of no violation of correlative rights necessarily included a finding that no drainage was occurring. *Id.* Our holding in *Leck* is equally applicable here. It is true that only the court may award damages for breach of contract. However when, as here, the judicial relief sought depends entirely upon the adjustment and protection of correlative rights already ruled on by the Commission, the court is not at liberty to make such a award if the Commission has concluded that no correlative rights have been violated. *See Pelican Production,* 746 P.2d at 212.[8]

### C.

 Plaintiffs argue that the Commission's order is not entitled to collateral estoppel effect because it was not final at the time the trial court ruled on the summary judgment motion. As we have noted, the Commission's order was affirmed while this appeal was pending.

Oklahoma provides by statute that "[n]o collateral attack shall be allowed upon orders, rules and regulations of the Commission made hereunder, but the sole method of reviewing such orders and inquiring into and determining their validity, justness, reasonableness or correctness shall be by appeal from such orders, rules or regulations to the Supreme Court." Okla.Stat., tit. 52, § 111. This statute by its plain language is not limited in its effect to those Commission orders already affirmed on appeal to the Supreme Court. Indeed we have refused to permit a collateral attack on a Commission order while such a judicial appeal of the

---

**8.** At oral argument, plaintiffs' counsel asserted that the Commission order held only that improper drainage had not been proven as of the date of the order. In so doing, plaintiffs apparently contend that the order therefore did not bar claims for improper drainage allegedly arising after the date the order was decided. We rejected the same argument in *Leck v. Continental Oil Co.,* 971 F.2d 604, 607 (10th Cir.1992), holding

that because the plaintiffs there had not applied to the Commission for a modification of the original order on the basis of changed conditions, or any other ground, the order was binding. Here the Commission decision came after the trial, and we have no indication that plaintiffs have sought a modification. Accordingly, our ruling in *Leck* is dispositive.

order was pending. *See Chenoweth v. Pan Am. Petroleum Corp.,* 314 F.2d 63, 65 (10th Cir.1963); *see also Amoco Prod. Co. v. Heimann,* 904 F.2d 1405, 1417 (10th Cir.) (holding that decisions by state oil conservation agencies may be entitled to collateral estoppel effect and citing *Chenoweth* ), *cert. denied,* 498 U.S. 942, 111 S.Ct. 350, 112 L.Ed.2d 314 (1990).

Moreover, we believe the Oklahoma courts would give preclusive effect to a Commission order in these circumstances under that state's common law doctrine of issue preclusion. The Oklahoma decisions have not articulated a bright-line rule when addressing whether a decision is final for purposes of preclusion despite the pendency of an appeal. *Compare Stovall v. Continental Fed. Sav. & Loan Ass'n,* 635 P.2d 1336, 1338 (Okla.Ct. App.1981) ("It is a long-standing legal principle that a judgment rendered by a court of competent jurisdiction on the merits is a bar to any future suit between the same parties or their privies on the same cause of action so long as the judgment remains unreversed."), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983), *with Lewis v. Aubrey,* 404 P.2d 1005, 1008 (Okla.1965) (holding that pending appeal rendered judgment nonfinal for purposes of collateral estoppel, but prohibiting further proceedings in second action until appeal resolved in order to serve the "ends of justice and 'the public policy of avoiding repetitious litigation' ").

■ Under the federal view, the pendency of an appeal does not prevent application of the collateral estoppel doctrine unless the appeal involves a full trial de novo. *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure,* § 4433, at 308 (1981); 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice,* ¶ 0.416[3.–2], at III–322 to III–323 (2d ed. 1993). The majority of state courts follow the federal rule. *See* 18 *Federal Practice & Procedure,* § 4433, at 313; 1B *Moore's,* ¶ 0.416[3.–2], at III–326.

The federal rule is likewise embodied in the *Restatement (Second) of Judgments.* Under the Restatement, "[a]n administrative adjudication becomes preclusive when it has become final in accordance with the rules stated in §§ 13 and 14 [of the Restatement].

It is not necessary that the administrative adjudication has been reviewed and affirmed by a court." *Restatement (Second) of Judgments* § 83 cmt. a (1980). Section 13 in turn states that "a judgment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo." *Id.* § 13 cmt. f. Because the Oklahoma Supreme Court follows the Restatement in formulating its collateral estoppel doctrine, *see, e.g., Wilson v. Kane,* 852 P.2d at 722 n. 23; *Veiser v. Armstrong,* 688 P.2d at 799 n. 7, we believe that court would adopt the Restatement position on finality under these circumstances.

We also find it significant that the Commission's order was judicially affirmed while this appeal was pending. In *Lewis v. Aubrey,* 404 P.2d 1005 (Okla.1965), the Oklahoma Supreme Court faced the issue of whether the pendency of an appeal prevented that court from giving the appealed judgment collateral estoppel effect in the action before it. Although the court held that the appeal rendered the judgment nonfinal for collateral estoppel purposes, it nonetheless prohibited further proceedings in the second action until the appeal of the first action had been decided. In our judgment, *Lewis* stands for the proposition that the Oklahoma courts would give a judgment preclusive effect once a pending appeal has been decided even though the judgment may not have been entitled to that effect under state law when the issue was initially raised.

Likewise in *Heinold Hog Mkt., Inc. v. McCoy,* 817 F.2d 81 (10th Cir.1987), we were asked to decide whether, under Oklahoma law, a judgment could be given preclusive effect even though it was the subject of a pending appeal. Rather than decide the issue, we held our disposition in abeyance until the pending appeal had been resolved by affirmance and then gave the judgment preclusive effect. Given the similarity in circumstances, we consider it proper under *Lewis* and *Heinold* to give preclusive effect to the Commission's order here.

In sum, we conclude that the trial court erred in refusing to give the Commission's order preclusive effect. We further hold that the order, which determined that an addi-

tional well was not necessary because no uncompensated drainage was occurring, bars all of plaintiffs' claims for relief. Accordingly, we reverse and remand with instructions to enter judgment in accordance with this opinion.

REVERSED and REMANDED.