Steven L. WILSON, Plaintiff–Appellee,

v.

**UNION PACIFIC RAILROAD COMPANY, Defendant–Appellant.**

No. 93–1386.

United States Court of Appeals, Tenth Circuit.

May 25, 1995.

*U.S. v. Alfonso Lopez, Jr.,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

Norman R. Mueller, Haddon, Morgan & Foreman, Denver, CO (Rachel A. Bellis, Haddon, Morgan & Foreman, Denver, CO and James L. Cox, Jr., Morrissard, Rossi, Cox, Kiker & Inderwish, Aurora, CO, with him on the briefs), for plaintiff-appellee.

Mark C. Hansen (David B. Ellis, with him on the briefs) Gorsuch Kirgis, Denver, CO, for defendant-appellant.

Before HENRY and LOGAN, Circuit Judges, and REED,* District Judge.

HENRY, Circuit Judge.

Union Pacific Railroad Company appeals from a judgment holding it liable under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60, and awarding damages to plaintiff-appellee Steven L. Wilson. We affirm, but remand for a recalculation of the postjudgment interest on the award.

## I.  BACKGROUND

On the night of February 2, 1990, Steven L. Wilson was working as a brakeman on an eastbound Union Pacific train passing through Kimball, Nebraska, when the crew noticed sparks emanating from one of the cars. The conductor stopped the train, and Mr. Wilson and the conductor went to diagnose the problem. After inspecting more than seventy cars, they determined that the brakes had locked on a car approximately twenty cars behind the engine. Mr. Wilson disabled the brakes so that the train could continue.

As Mr. Wilson and the conductor prepared to return from this task, they were notified that another train was coming up behind them and would be passing them on the south side of their train. The two men accordingly moved to the other side of the train and began their walk back to the head of the train. Mr. Wilson used his lantern to illuminate his path in the dark and continued to inspect the other cars as he walked. Proceeding eastward, Mr. Wilson encountered a county road that lay perpendicular to the track. As he crossed the road, he stepped into a deep rut and injured his ankle.

From the initial injury, Mr. Wilson developed reflex sympathetic dystrophy (RSD), a chronic pain condition. He underwent a lengthy course of medical treatment, but was never released by his physician to return to work as a brakeman. Evidence at trial indicated that Union Pacific planned to interview him for a light duty position as a security guard, but Mr. Wilson was jailed on a drug possession complaint and thus failed to appear for the interview. He later pled guilty to possession of a controlled substance and was terminated by Union Pacific. At the time this litigation commenced, Mr. Wilson was in the process of appealing the termination to a grievance board.

---

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Neva- da, sitting by designation.

Mr. Wilson brought an action against Union Pacific under FELA and the Safety Appliance Act (SAA), 45 U.S.C. §§ 1–21.[1] In the first phase of a bifurcated trial, the jury found that Union Pacific had violated the SAA and that the violation was the cause of Wilson's injuries. In the second phase, the jury found damages in the amount of $500,-000.

## II. DISCUSSION

### A. Causation

We turn first to Union Pacific's contention that the causal nexus between the SAA violation and Wilson's injury is insufficient to support a finding of liability under FELA. Union Pacific argues that its motion for summary judgment on the SAA claim was erroneously denied. In the alternative, Union Pacific contends that the district court erred by refusing to instruct the jury that the causal link between the defective brake and Mr. Wilson's injury was broken once the plaintiff reached a "place of safety."

### 1. Summary Judgment

■ As to the motion for summary judgment, Mr. Wilson incorrectly contends that Union Pacific lost the chance to appeal this issue when it failed to move for a judgment as a matter of law under Fed.R.Civ.P. 50 at the close of trial. Not every denial of a motion for summary judgment requires a subsequent Rule 50 motion in order to be appealable. A critical distinction exists between "summary judgment motions raising the sufficiency of the evidence to create a fact question for the jury and those raising a question of law that the court must decide." *Ruyle v. Continental Oil Co.*, 44 F.3d 837, 842 (10th Cir.1994). Where a motion for summary judgment based on an issue of law is denied, appellate review of the motion is proper even if the case proceeds to trial and the moving party fails to make a subsequent Rule 50 motion. *Id.*

Union Pacific's motion for summary judgment was neither phrased as, nor understood by the court to be, a challenge to the sufficiency of the plaintiff's evidence. Instead, the motion was one that raised a question of law for the court. The railroad contended that under the appropriate FELA causation standard the SAA violation could not, as a matter of law, have been the cause of any injury once the plaintiff left the site of the violation. Determining the validity of such an argument is manifestly a question of law that the court must decide. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 45 (5th ed. 1984) (analyzing the functions of court and jury in determining causation). Thus, under *Ruyle*, no Rule 50 motion was required to preserve the motion. We therefore turn to the substance of Union Pacific's appeal.

A district court's denial of a motion for summary judgment is reviewed de novo. *Monarch Cement Co. v. Lone Star Indus., Inc.*, 982 F.2d 1448, 1451 (10th Cir.1992); *Metro Oil Co. v. Sun Refining & Mktg. Co.*, 936 F.2d 501, 503 (10th Cir.1991). The denial is reversible where there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Monarch Cement*, 982 F.2d at 1451. Here the record reveals no dispute over the material facts relevant to the SAA violation and the circumstances of Mr. Wilson's injury. However, we conclude that Union Pacific was not entitled to judgment as a matter of law.

■ The SAA is designed to reduce railroad accidents by requiring the installation and maintenance of safety devices. Although the SAA does not in itself create a cause of action for violations, an SAA violation constitutes per se negligence for purposes of employer liability under FELA. Thus, an employee injured by an SAA violation has a cause of action untrammeled by common law restrictions on tort liability such as contribu-

---

1. FELA provides in pertinent part that "[e]very common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce." 45 U.S.C. § 51. Additionally,

FELA makes clear that liability under the Act may arise out of a violation of the SAA. *San Antonio & Aransas Pass Ry. v. Wagner*, 241 U.S. 476, 484, 36 S.Ct. 626, 629, 60 L.Ed. 1110 (1916) (citing FELA § 4 (codified as amended at 45 U.S.C. § 54)).

tory negligence and assumption of the risk. *Crane v. Cedar Rapids & Iowa City Ry.*, 395 U.S. 164, 166, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1969).

The SAA–FELA plaintiff "is not required to prove common-law proximate causation but only that his injury resulted 'in whole or in part' from the railroad's violation of the Act." *Id.* (quoting 45 U.S.C. § 51); *see also Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 508, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 (1957) (FELA's causation requirement is satisfied if the employer's action played "any part, however small" in injuring the employee).

■ A relaxed causation requirement is not the same as no requirement at all; it is not enough that there be an SAA violation "in the air" when a plaintiff is injured. Thus, where there are no disputed material facts, and it can be said as a matter of law that the alleged SAA violation played absolutely no part in the plaintiff's injury, summary judgment for the defendant remains proper in a FELA case. This is not such a case. It is undisputed that Mr. Wilson was injured while returning from attending to an SAA violation. But for the violation, Mr. Wilson would not have been forced to walk on the dark, rutted road where the injury occurred.

Union Pacific argued strenuously at trial that this "but for" relationship did not suffice to establish legal causation because the violation was too remote from the injury. We disagree. This court has previously held that an employee who is injured while on the way to repair an SAA violation may recover under FELA. *Metcalfe v. Atchison, Topeka & Santa Fe Ry.*, 491 F.2d 892, 898 (10th Cir.1974). Even under a proximate cause analysis, it is entirely foreseeable that an employee charged with repairing an SAA violation must not only go to but also return from the repair site. In this case, where there is no suggestion that Mr. Wilson had returned from the repair site or had begun duties unrelated to the SAA violation, we find no error in the district court's denial of Union Pacific's motion for summary judgment.

### 2. The "Place of Safety" Instruction

■ We turn next to Union Pacific's proffered "place of safety" instruction. We review for abuse of discretion the district court's refusal to submit this instruction to the jury. *Hinds v. General Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir.1993). We find none.

Union Pacific proposed this instruction on the basis of the court's reasoning in *Wright v. Cincinnati, New Orleans & Texas Pac. Ry.*, 107 Ohio App. 310, 152 N.E.2d 421 (1958), *cert. denied*, 359 U.S. 979, 79 S.Ct. 897, 3 L.Ed.2d 928 (1959). In that case the plaintiff, a railroad brakeman, was injured while in the process of attending to an SAA violation on his train. He returned from the site of the violation to the locomotive, stayed there for several minutes, then proceeded to another car in order to retrieve a part to complete the repair. While there, the plaintiff slipped and fell. The court denied recovery because the plaintiff had reached a "place of safety," namely the locomotive, before the injury occurred. *Id.* 152 N.E.2d at 424.

The trial court in the present case did not abuse its discretion in refusing an instruction based on *Wright*. Mr. Wilson, unlike the plaintiff in *Wright*, was still on his way from the violation to the locomotive when the injury occurred. In the context of the facts in this case, the "place of safety" theory urged by Union Pacific merely repeats Union Pacific's contention that no causal link exists between the SAA violation and the injury. No site where a plaintiff sustains an injury can be called "safe" in an absolute sense; it is a "place of safety" only in relation to some particular hazard that cannot cause harm there. Thus, to conclude that Mr. Wilson's injury occurred after reaching a place of safety is simply to deny that the SAA violation caused the injury. It is true that a party is entitled to an instruction based on its theory of the case so long as the appropriate facts are presented. *Trejo v. Denver & Rio Grande W. R.R.*, 568 F.2d 181, 184 (10th Cir.1977). However, because Union Pacific's theory concerns causation, and the instructions as a whole adequately informed the jury on that issue, we find no error in the trial court's ruling on this matter.

### B. Other Evidentiary Rulings

Union Pacific next appeals several evidentiary rulings. We review each for abuse of

discretion, *United States v. Smith,* 10 F.3d 724, 727 (10th Cir.1993) (per curiam); *Hall v. Western Prod. Co.,* 988 F.2d 1050, 1058 (10th Cir.1993), and find none.

### 1. The Drug Conviction

■ During the liability phase of the trial, Union Pacific was not permitted to introduce evidence of Mr. Wilson's drug conviction in order to impeach his credibility as a witness under Fed.R.Evid. 609(a). Evidence of a conviction for drug possession alone is not highly relevant to the issue of veracity. *United States v. Puco,* 453 F.2d 539, 543 (2d Cir.1971). Moreover, such evidence can be highly prejudicial and arouse jury sentiment against a party-witness. *Meller v. Heil Co.,* 745 F.2d 1297, 1303 (10th Cir.), *cert. denied,* 467 U.S. 1206, 104 S.Ct. 2390, 81 L.Ed.2d 347 (1984). Given the substantial deference accorded to the trial court in balancing these factors, *Smith,* 10 F.3d at 727, we find no error in the court's exclusion of evidence relating to Mr. Wilson's drug conviction.

■ In the damages phase of the litigation, Union Pacific resumed its quest to admit evidence of the drug conviction, this time not only to impeach credibility but also for three other purposes. First, Union Pacific argued that the conviction, not the injury, caused the plaintiff's termination as a brakeman, thus invalidating the calculation of damages by Wilson's expert, who assumed that Mr. Wilson would have had a job with the railroad for life. Second, Union Pacific argued that the conviction, not the injury, disqualified Mr. Wilson from the security guard position for which he was scheduled to interview. Third, Union Pacific contended that the conviction, not just the injury, reduced Mr. Wilson's future employability.

While Union Pacific is on a firmer footing here, it still cannot be said that the trial court abused its broad discretion. As to the causal link between the conviction and the termination, the court noted that the conviction occurred only after Mr. Wilson had already been medically disqualified from returning to his job. It is true that his termination on account of the drug conviction, if upheld through the grievance process, would have cut off income from that employment. But the termination was not final at the time of trial. The trial court thus noted correctly that admitting evidence of the conviction to explain the termination would have raised a "congery of collateral matters."[2]

Similarly, we find no merit in Union Pacific's second and third contentions, that Mr. Wilson's drug conviction should have been admitted to explain his loss of the security guard interview and to account for his diminished employability. It remained undisputed at trial that Mr. Wilson could have worked in any number of light duty jobs other than as a security guard, and Mr. Wilson's expert discounted his damages to the extent of such potential earnings. We therefore conclude that the trial court correctly excluded evidence of the conviction during the damages trial.

We reject for similar reasons Union Pacific's contention that, if it could not introduce evidence of the conviction, it should at least have been allowed to introduce evidence that Mr. Wilson was terminated for reasons unrelated to his injury. Exclusion of this evidence may have prevented the jury from considering all the circumstances surrounding Mr. Wilson's termination. But as we said before, admission would certainly have resulted in the needless proliferation of collateral issues. Given this choice, we find no abuse of discretion in the district court's decision to exclude this evidence.

### 2. Chance of Paralysis

■ Union Pacific also appeals the admission, during the damages trial, of expert testimony regarding the one to five percent chance of paralysis accompanying the insertion of an epidural stimulator, a surgical procedure to control RSD–related pain. The district court initially sustained Union Pacif-

---

**2.** Union Pacific erroneously likens Wilson's termination to cases in which the plaintiff's death before trial precludes the projection of future income. If the termination had been final, Wilson injured would have had an earning capacity that was both measurable and less than that of Wilson uninjured. Death, on the other hand, is an absolute bar to future earnings. *See Tucker v. Calmar S.S. Corp.,* 356 F.Supp. 709, 711–12 (D.Md.1973).

ic's objection to this testimony, but left open the possibility that the evidence might be admissible for certain purposes. At trial, the evidence was admitted over Union Pacific's general objection. The record contains no indication of the purpose for which the evidence was then proffered or the ground for the objection. Union Pacific contends that this evidence should have been excluded because an expert witness must confine his testimony to those opinions that are based on probabilities and not possibilities. *See Higgins v. Martin Marietta Corp.*, 752 F.2d 492, 496 (10th Cir.1985). Mr. Wilson responds that Union Pacific's general objection failed to preserve this issue for appeal.

Although the record provides no guidance on the district court's reason for admitting the expert's testimony after Union Pacific's motion had been granted, the trial court clearly specified when it granted the motion that legitimate reasons for admission did exist. Given Union Pacific's failure to provide a ground for its objection at the time of admission, we review only for "plain error affecting the substantial rights of the parties." *Quinton v. Farmland Indus., Inc.*, 928 F.2d 335, 337 (10th Cir.1991). We find no such error.

### C. Mitigation

Union Pacific next contends that the district court improperly refused its proffered jury instruction on Mr. Wilson's duty to mitigate damages. We review for abuse of discretion. *Hinds*, 988 F.2d at 1046.

As noted above, a party is entitled to an instruction based on its theory of the case whenever it produces evidence to support it. *Trejo*, 568 F.2d at 184. Union Pacific presented evidence that Mr. Wilson failed to appear for the security guard interview and that he made no effort to find work for eighteen months before the damages trial.

■ Mr. Wilson's first response is that he was never actually offered a job, and so never had the opportunity to mitigate his damages. That is incorrect. An unemployed plaintiff who is able to look for work does not satisfy his duty to mitigate by waiting passively for employment to be offered. The opportunity to mitigate is not merely the opportunity to accept a job, but the opportunity to seek appropriate work when one is able to do so. If that opportunity is shown to have existed, the issue of mitigation should not normally be prevented from reaching a properly instructed jury. *Id.*

■ However, in the context of this case the trial court's refusal to instruct the jury on mitigation does not amount to an abuse of discretion because the evidence was inadequate to support a mitigation instruction. Mr. Wilson's general failure to seek employment for eighteen months before trial does not alone suffice to justify a mitigation instruction; the defendant must also show that appropriate jobs were available. *See Coleman v. City of Omaha*, 714 F.2d 804, 808 (8th Cir.1983) (applying this principle to a claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634). Here the record does not indicate that Mr. Wilson was physically able to look for work or that appropriate jobs existed. Thus, the only basis for a mitigation instruction in this case is Mr. Wilson's failure to interview for the security guard position, a job that his doctor testified he could not have performed in any event. We find no error in the district court's refusal to give a mitigation instruction based on such evidence. *See Schneider v. National R.R. Passenger Corp.*, 987 F.2d 132, 136–37 (2d Cir.1993) (holding that the district court in a FELA case did not err by preventing the issue of mitigation from going to the jury, where the sole evidence on the issue was plaintiff's failure to take a job offered by the railroad and plaintiff's doctor testified that the job was medically unsuitable). Given these factors, the trial court was within the bounds of its discretion to conclude that the missed interview alone was insufficient to support the mitigation instruction.

### D. Postjudgment Interest

Finally, Union Pacific appeals the district court's determination under 28 U.S.C. § 1961 that interest on the award should begin from the date of the liability judgment. As a question of law regarding the interpretation of a federal statute, this issue is reviewed de novo. *Key v. Liquid Energy Corp.*, 906 F.2d 500, 505 (10th Cir.1990).

On August 11, 1993, after the jury had returned its verdict in the damages trial, the

district court entered a judgment awarding $500,000 to the plaintiff, with interest of 9% per annum on the award from the date of the injury. On August 20, Union Pacific filed a motion to alter or amend the judgment, arguing that prejudgment interest is not awardable in a FELA action. On August 30, 1993, the court issued an amended judgment ordering interest of 3.58% per annum from the date of the original judgment on the issue of liability. On September 2, Mr. Wilson filed his response to the defendant's motion, requesting what the court had already ordered. On September 10, Union Pacific filed a reply to Mr. Wilson's response, arguing that interest should not start to accrue until entry of the money judgment. On September 27, Union Pacific filed its notice of appeal.

Mr. Wilson contends first that Union Pacific has not preserved this issue for appeal because it never filed a second Rule 59 motion on the amended judgment. The general rule is that a federal appellate court will not consider an issue not raised or resolved in the district court. *Youakim v. Miller*, 425 U.S. 231, 234, 96 S.Ct. 1399, 1401, 47 L.Ed.2d 701 (1976) (per curiam); *Neu v. Grant*, 548 F.2d 281, 287 (10th Cir.1977). However, the question here was both raised and resolved, although the district court's alteration of its first judgment reversed the usual order of those events. In addition, this is a question of statutory construction, a purely legal issue which this court has broad discretion to review. *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir.1992). We therefore turn to the merits of Union Pacific's argument.

The simple text of the statute resolves the issue: a prevailing party in a civil action may collect interest on "any money judgment.... Such interest shall be calculated from the date of the entry of the judgment." 28 U.S.C. § 1961(a). No ambiguity here permits multiple constructions; the date to which the statute refers is the date of entry of the money judgment.

Mr. Wilson nonetheless contends that in a bifurcated trial the liability judgment in fact *is* a money judgment, because only the amount of the award remains to be calculated. We cannot agree. Were the plaintiff correct, interest would be due from the date of a summary judgment determining liability.[3] In any trial, bifurcated or not, postjudgment interest should be calculated from the date that a plaintiff's damages are "meaningfully ascertained and included in a final, appealable judgment." *MidAmerica Fed. Sav. & Loan v. Shearson/American Express, Inc.*, 962 F.2d 1470, 1476 (10th Cir. 1992); *see also Ashland Oil, Inc. v. Phillips Petroleum Co.*, 607 F.2d 335, 336 (10th Cir. 1979), *cert. denied*, 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980) (where damages were recalculated after remand, interest accrued from the date the damages were correctly calculated).

We accordingly AFFIRM the judgment for the plaintiff, but REMAND the case to the district court for a correct determination of postjudgment interest.

---

3. The plaintiff's analogy to attorney's fees cases in other circuits, *see, e.g., Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 543–45 (5th Cir.1983) (en banc) (per curiam), is similarly misplaced. Unlike the calculation of attorney's fees, the damages phase of a trial is not a postlude to the determination of liability.